Strafford
No. 78-084

CONSTANCE AZZI

v.

VICTOR AZZI

September 27, 1978

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover (*James H. Schulte* orally), for the plaintiff.

*James J. Kalled,* of Wolfeboro, by brief and orally, for the defendant.

BOIS, J. The question in this divorce case is whether the trial court abused its discretion in dividing the parties' property, ordering child-support, and awarding custody. We hold there was no abuse of discretion, and dismiss the defendant's exceptions.

The parties married in 1960. They have two children, a son born in 1961 and a daughter born in 1963. The plaintiff filed a libel for no-fault divorce in 1976; the defendant filed a cross-libel. Although they agreed that their assets should be evenly divided, the parties

were unable to agree on the value of some assets and on whether certain assets should be excluded from the division. They submitted the dispute to a Master (*Robert A. Carignan*, Esq.), who held hearings on May 3 and May 26, 1977. On June 10, 1977, the master issued a report recommending that a divorce be decreed and that the plaintiff be awarded custody of both children. The defendant was to pay $225 per week in child support to the plaintiff, who waived alimony. The master suggested that each party be entitled to claim one child for federal income tax purposes. The parties were to contribute to the total costs of educating the children even after the children reached the age of majority. The master's report also set forth a scheme for dividing the parties' real and personal property. These and supplementary recommendations issued by the master were approved by the Court (*Mullavey*, J.), who reserved and transferred the defendant's exceptions.

We have held that in reaching determinations in divorce/child support cases, "it is fundamental . . . that the Court has broad discretion (citation omitted) and that its decision will not be set aside unless 'the evidence demonstrates clearly an abuse' of such discretion." *Mangin v. Mangin*, 115 N.H. 489, 490, 343 A.2d 636, 637 (1975). We have further held that the "[d]efendant has the burden of showing that the orders were 'improper and unfair.' " *Adams v. Adams*, 117 N.H. 43, 44, 369 A.2d 196, 197 (1977).

We group defendant's exceptions under three headings:

I. Property division.

The defendant first argues that the master erred in failing to make specific findings of the value of certain real and personal property, to wit: the homestead in Durham, New Hampshire; the so-called "Stevens lot" adjacent to the homestead; the household furnishings; and a tract of land in Farmington, New Hampshire. It is true that the master's findings were not as specific as they might have been and that our review would have been facilitated by particularized appraisals of the value of the parties' possessions. *See Economides v. Economides*, 116 N.H. 191, 357 A.2d 871 (1976). The master's failure to evaluate the parties' property item by item, however, does not constitute error. The record contains sufficient evidence of the value of the parties' assets to enable us to determine whether the property settlement is unjust.

The defendant next argues that the master erred in not granting him the so-called "Stevens lot," a tract of land near the par-

ties' home. According to the defendant, the master's failure to give this land to him violated the master's obligation to divide the real estate equally. We do not agree that the master bore any duty to divide the real estate equally. His task was to view the parties' real and personal property as a whole and propose an equitable distribution. Considering the property settlement in its entirety, we do not think that the master erred in dividing the real estate as he did. *See Murphy v. Murphy*, 116 N.H. 672, 675, 366 A.2d 479, 482 (1976).

A further objection the defendant makes to the division of real estate is that: "The IRS will deem this a capital gain payable by the husband and taxed to the husband." Yet, the defendant did not raise this point below, he has not demonstrated to this court what, if anything, the alleged tax burden will amount to, and he has not shown that he will bear more of the tax burden than the plaintiff will. Tax consequences should be considered by attorneys and masters in their negotiations or rulings. On the record, we cannot say that the award of the homestead to the plaintiff was erroneous.

Neither did the master err in not crediting the defendant with one-half of the plaintiff's inheritance from her father. At the May 31, 1978 hearing, the defendant specifically disclaimed any interest in the inheritance, agreeing that it should not be placed on the scales when the marital property was divided.

More problematic is the master's refusal to take into account a $12,100 debt said to be owed by the defendant to the University of New Hampshire. This sum represents the amount of money paid to the defendant while he was on sabbatical from his teaching position at the university. When his sabbatical ended, the defendant did not resume teaching full time at the university. The university claimed that the duty to teach full time for a year after the sabbatical was a condition subsequent to the defendant's retention of the sabbatical pay, and that, therefore, the defendant must repay the money.

Defendant's testimony was that he had deposited the $12,100 in various accounts owned by the parties; hence the money appears in the parties' inventories as part of their accumulated assets. Thus, defendant argues that because he must eventually repay the $12,100, he should be credited with one-half of that amount in the property settlement.

The master apparently rejected this argument. We affirm. The defendant alleged that he had originally resisted the repayment demand, believing the university's claim unsupportable, but that he decided to accede to it rather than jeopardize his continuing relationship with the university. The master thus could have determined

that the defendant's eventual repayment of the $12,100, if it occurs, will not represent the satisfaction of a legal obligation, but rather a moral one. Additionally, even if the defendant must repay the entire $12,100 debt, this burden is only part of the property settlement, and is offset by assets that the defendant will retain, such as his deferred compensation, pension, and profit-sharing plans. *See Murphy v. Murphy*, 116 N.H. 672, 366 A.2d 479 (1976).

Finally, we reject the contention that the master divided the homestead furnishings unequally. This contention is based on the defendant's own computation of the respective values of furnishings decreed to the plaintiff and to the defendant. As we have often noted, the master is free to reject even uncontradicted evidence. *See, e.g., Gordon v. Gordon*, 117 N.H. 862, 865, 379 A.2d 810, 813 (1977). We cannot say that the master's division of the furnishings was manifestly an abuse of discretion. Also, even if the furnishings were unequally divided, the property settlement as a whole cannot be said to be inequitable. *See Murphy v. Murphy*, 116 N.H. 672, 366 A.2d 479 (1976).

II. Child support

Defendant submits that: "The award of $225.00 per week for the support of the children is excessive and unreasonable." He would have us reduce his support obligation to $150 per week. This we refuse to do. There is no showing that the master abused his discretion. *See Madsen v. Madsen*, 109 N.H. 457, 255 A.2d 604 (1969); *Symmes v. Symmes*, 118 N.H. 488, 387 A.2d 1181 (1978) (per curiam).

The defendant also seeks modification of the order that the parties jointly contribute to the reasonable college education expenses of the children. The defendant apparently reads this order as requiring *all* of the children's educational expenses to be borne by the parents, and argues that it is unfair to place such a burden on the parents when the children themselves have substantial bank accounts and other assets. We do not share the defendant's interpretation of the order. Rather, we think that the parents are required to pay out of their own funds only a reasonable portion of the children's educational expenses. *Payette v. Payette*, 85 N.H. 297, 157 A. 531 (1931). The defendant may seek a judicial determination of his share of the expenses at such time as he is sought to be charged for them. It is then that his appropriate share can be most accurately apportioned. *See Golden v. Golden*, 37 App. Div. 2d 578, 323 N.Y.S.2d 714 (1971).

Neither did the master err in failing to limit the defendant's obligation to contribute to the education of his children to only four years. In their "temporary stipulation," the parties themselves expressed their willingness to keep open-ended their obligation to contribute to their children's education. *See French v. French*, 117 N.H. 696, 699–700, 378 A.2d 1127, 1128–29 (1977) (per curiam).

III. Custody

■ Custody of the children was awarded to the plaintiff; the defendant was granted visitation rights. He asserts that the master erred in denying the request for a ruling that: "There was sufficient evidence presented to support a finding that custody of the children could be awarded to Victor Azzi." The master found that: "It is in the best interest of the children that they remain with the plaintiff. . . ." He thus properly applied the standard for awarding custody. *See Greenglass v. Greenglass*, 118 N.H. 570, 391 A.2d 890 (1978); RSA 458:17 (Supp. 1977). The record supports this finding and so it must stand. *See Ballou v. Ballou*, 118 N.H. 463, 387 A.2d 1169 (1978).

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.