Merrimack
No. 2000-081

## IN THE MATTER OF JOHANE R. TELGENER AND RICHARD J. TELGENER

Argued: January 17, 2002
Opinion Issued: July 29, 2002

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* and *Jason R.L. Major* on the brief, and *Mr. Douglas* orally), for the respondent.

DUGGAN, J. The respondent, Richard J. Telgener, appeals an order of the Superior Court (*McGuire*, J.) approving the recommendations of the Marital Master (*Leonard S. Green*, Esq.) in his divorce action. He argues that the trial court erred in failing to consider tax consequences when distributing the parties' marital assets. We affirm.

The parties married in 1983. The petitioner, Johane R. Telgener, filed a libel for divorce in 1998 on the ground that irreconcilable differences had caused the breakdown of the marriage. In November 1999, the marital master heard two days of testimony concerning marital assets. During the final hearing, the respondent acknowledged that he did not object to the petitioner being awarded the marital home so long as he received his equity in the home and was relieved from liability on the home's outstanding mortgage debt. In explaining the importance of the above request, the respondent testified that after the divorce he wanted to purchase a house. He believed that he would not be eligible to obtain a mortgage because of the amount of debt he owed, which primarily stemmed from his liability for the mortgage associated with the marital home. The respondent further stated that in the event the court awarded

him retirement funds to offset his equity in the house, as opposed to cash, he would probably need to invade his tax-deferred assets for a down payment and would incur substantial tax penalties associated with an early withdrawal from those assets. Because of the adverse tax consequences, the respondent argued that in distributing the marital assets, the trial court should reduce the value of the retirement funds awarded to him to account for the tax consequences associated with early withdrawal.

In the final decree, the trial court awarded the marital home and its equity to the petitioner. The trial court denied the respondent's request that the petitioner refinance the home so that the respondent's name could be removed from the mortgage. In denying this request, the trial court explained that requiring the petitioner to refinance the home would probably force her to sell it, and such a requirement would not be "fair, equitable or just." In dividing the remaining property, the trial court allocated to each party a portion of his or her IRA and deferred compensation plan. This property distribution resulted in both the petitioner and respondent receiving approximately one-half the value of the total assets. While the petitioner received the equity in the marital residence, the respondent received mostly tax-deferred assets. The trial court, however, did not reduce the value of the tax-deferred assets in light of the respondent's testimony that he might incur substantial tax penalties in the event he needed to withdraw some of the assets to secure financing for a house. This appeal followed.

"In a divorce action, the trial court has broad discretion in determining the equitable distribution of the marital estate." *In the Matter of Jones and Jones*, 146 N.H. 119, 123 (2001). Absent an unsustainable exercise of discretion, we will not overturn the decision of the trial court in matters involving alimony and property distribution. *Id.*; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard).

On appeal, the respondent asserts that the trial court's distribution of marital assets was not equal because he would be forced to incur substantial negative tax consequences as a result of the court's chosen distribution scheme. The respondent argues that the trial court committed legal error because it was aware of his desire to purchase a new home and was informed of the difficulty he would face in obtaining financing for a new residence. Nevertheless, the trial court failed to consider that to secure financing for a house, the respondent would be forced to liquidate some of the tax-deferred retirement accounts awarded him and incur substantial tax penalties for early withdrawal. The respondent, therefore, asserts that the distribution was unequal, inequitable and injurious

because of the trial court's failure to consider these reasonably foreseeable tax consequences.

The division of property in a divorce proceeding is governed by RSA 458:16-a (Supp. 2001). This statute provides in relevant part that an equal division of property is presumed equitable unless the trial court decides that an equal division would not be appropriate or equitable after considering a number of factors, including "[t]he tax consequences for each party." RSA 458:16-a, II (j). Although it is well-settled that "[t]ax consequences should be considered by attorneys and masters in their negotiations or rulings," *Azzi v. Azzi*, 118 N.H. 653, 656 (1978), neither the statute nor our caselaw provides guidance as to when the trial court should consider the tax consequences of its division of property.

Other courts have held that a trial court may consider tax consequences only when the tax liability is reasonably ascertainable. If a taxable event such as a sale of property is required by the property distribution or is certain to occur shortly thereafter, a court should consider the tax consequences of the property distribution. *See, e.g., Irvine v. Irvine*, 685 N.E.2d 67, 69-70 (Ind. Ct. App. 1997); *Crooker v. Crooker*, 432 A.2d 1293, 1297 (Me. 1981); *Brockman v. Brockman*, 373 N.W.2d 664, 665-66 (Minn. Ct. App. 1985); *Kaiser v. Kaiser*, 474 N.W.2d 63, 69-70 (N.D. 1991); *Hovis v. Hovis*; 541 A.2d 1378, 1380 (Pa. 1988). Consideration of a tax consequence is precluded, however, when the trial court must speculate as to a party's future dealing with the property. *See Brockman*, 373 N.W.2d at 666. As such, where there is merely a likelihood or possibility that a taxable event will occur, a court may not reduce the value of an asset by uncertain tax consequences. *See Kaiser*, 474 N.W.2d. at 69-70.

We agree with the foregoing decisions and therefore hold that a court in a divorce action may only consider potential taxes in valuing marital assets if a taxable event such as a sale or other transfer of property is required by the property distribution, or is certain to occur shortly thereafter. In the present case, liquidation of the retirement funds was neither required by the final decree nor certain to occur within a short time after the final decree. We disagree with the respondent's argument that because he was not awarded any equity in the home, he was required to liquidate his retirement funds in order to purchase a house. Any adverse tax consequences incurred by the respondent were not necessitated by the court's order, but rather were entirely dependent upon his voluntary actions. In the final decree, the trial court noted that the respondent "raised as an issue his potential problem of obtaining financing for a mortgage while still named on the current home mortgage." The court determined that because the respondent was awarded savings bonds, a life

insurance policy with a cash value and had the ability to borrow up to $50,000 from his 401(k), "[t]his should give him some flexibility when it comes to obtaining a mortgage." Even assuming any of these suggestions would result in adverse tax consequences, nothing in the trial court's final decree *required* the respondent to take any of these actions.

We also disagree with the respondent's contention that the tax liability was certain to occur within a short time after the final decree and therefore was reasonably ascertainable. The respondent testified regarding his desire to purchase a new home, yet admitted that he had no present plans to do so. Additionally, the respondent failed to produce evidence showing that he would necessarily need to use tax-deferred assets, and if so, the amount of taxes that would then be incurred. Although the respondent testified that he had discussed with his accountant whether he would qualify for a home mortgage, the respondent had not gone to a mortgage broker or mortgage lender to discuss his credit history and how it would affect his eligibility to borrow money to purchase a house. Because the respondent's testimony was insufficient to show that the tax liability was reasonably ascertainable, consideration of a tax consequence would have been improper as it would have required the trial court to engage in speculation regarding the respondent's future dealings with his retirement funds. *Cf. Brockman*, 373 N.W.2d at 666. We therefore conclude that because the withdrawal of retirement funds was neither required by the trial court's order nor certain to occur within a short time after the divorce decree, the trial court did not err in failing to reduce the value of his retirement funds to account for the tax consequences of early withdrawal.

*Affirmed.*

BRODERICK and NADEAU, JJ., concurred; BATCHELDER, J., retired, specially assigned under RSA 490:3, concurred.