Salem Family Division
No. 2001-536

### IN THE MATTER OF PETER LETENDRE AND LINDA LETENDRE

Argued: October 9, 2002
Opinion Issued: December 31, 2002

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*John A. Macoul*, of Salem, by brief and orally, for the respondent.

BRODERICK, J. The petitioner, Peter Letendre, appeals the divorce decree issued by the Salem Family Division (*Reardon*, J.) awarding the respondent, Linda Letendre, alimony, health insurance coverage and an unequal interest in the marital estate. We affirm.

The parties were married in 1982. The respondent did not graduate from high school, and although she worked periodically outside the home during the marriage, she devoted most of her time to maintaining the parties' household and caring for their two children. Throughout the marriage, the petitioner worked for Letendre Moore & O'Connell, Inc. (LMO), of which he is president and a one-third owner.

When LMO was formed in 1978, each of the three owners received fifty shares of stock in the corporation. In 1984, the LMO shareholders adopted a stock redemption agreement to provide a buyout mechanism in the event that a shareholder died or sought to sell his stock. The agreement contains no restrictions on selling shares to a third party. The shareholders set the initial stock redemption price at $4,000 per share, and, beginning in 1992, they met annually to determine current share valuation. In 2000, they set the stock redemption price at $6,785.40 per share.

LMO is debt-free and rents office space from LMO Trust, in which the petitioner is also a one-third owner. The LMO Trust distributes its earnings annually to the three LMO shareholders. In addition to his regular salary and the annual distribution from the LMO Trust, the petitioner receives corporate contributions towards a profit-sharing plan, an annual bonus, and health and life insurance benefits. In 1999, the petitioner realized $134,878 in compensation and earnings.

During the marriage, the respondent was a party to a gender discrimination lawsuit against a Massachusetts country club, to which the parties belonged. In October 1999, she was awarded a verdict of $278,600 against the club. To date, the respondent has not received any payment, and the verdict is on appeal in Massachusetts.

In November 1999, the parties separated and the petitioner filed for divorce on grounds of irreconcilable differences. The respondent filed a cross-petition alleging fault. She also served interrogatories upon the petitioner requesting information about his anticipated expert witnesses, to which the petitioner responded "Unknown at present." In March 2000, the trial court conducted a pre-trial conference and ordered all discovery to be completed by August 15. In June, the respondent served a "Further Request for the Production of Documents to the Petitioner," which contained a request for documents to be submitted by the petitioner's experts, including business appraisals and valuations. The petitioner failed to respond, and the respondent filed a motion *in limine* seeking to preclude the petitioner from introducing at trial any appraisals, reports or other expert testimony not properly disclosed pursuant to Superior Court Rule 35(f) or by the August 15 deadline. The court conducted a hearing and granted the motion. After a three-day final hearing in September 2000, the trial court granted a divorce on fault grounds, finding that the petitioner's verbal misconduct towards the respondent during their seventeen-year marriage caused her serious injury.

At the time of the hearing, the petitioner was fifty-four years of age and the respondent was forty-eight. They owned two houses unencumbered by any mortgage. Their primary residence had an appraised value between $220,000 and $280,000, and their rental property in Rhode Island was appraised between $125,000 and $135,000. In addition, they had various investment and retirement accounts, profit-sharing benefits, and educational accounts. The educational accounts, valued at approximately $310,000, were established for the educational expenses of their children. The respondent had one retirement account in her name, which was valued at approximately $10,000. The remaining accounts, valued at approximately $1,228,000, were either in the petitioner's name or held jointly by the parties. Additionally, the parties owned a one-third interest in the LMO Trust and its assets, including the real estate occupied by LMO.

The trial court ordered joint legal custody of the parties' minor child, with primary physical custody awarded to the respondent, and further ordered the petitioner to pay child support. It also required that the parties' educational accounts be maintained for both children.

In dividing the marital estate and awarding alimony, the trial court specifically noted that it took into consideration the fault of the petitioner, the length of the parties' marriage, the respondent's ability to acquire future assets, the respondent's needs and the petitioner's ability to pay. Accordingly, it awarded the respondent alimony of $3,000 per month until she either died or remarried and ordered the petitioner to maintain health insurance for her until she was able to obtain her own coverage through employment or remarriage. In addition, the court awarded her the retirement account that was in her name, credited to her half of any assets or sums removed by the petitioner since the commencement of the divorce proceedings, and awarded to her sixty-five percent of the parties' retirement, profit-sharing and other accounts after allowing the respondent to withdraw $56,000 from those accounts to reflect the parties' one-third interest in the LMO Trust. The court also awarded the respondent the marital home and the Rhode Island real estate, and the petitioner was awarded the parties' one-third interest in the assets of the LMO Trust. Finally, the court awarded the respondent the verdict from the Massachusetts action.

With regard to the value of the petitioner's LMO stock, the court heard testimony from the petitioner that the stock redemption price of $6,784.40 per share was not based upon a professional appraisal and did not reflect fair market value. Nonetheless, the court relied upon that price to assess the total value of the petitioner's fifty shares at $339,270, and it awarded the respondent fifty percent of this sum. Both parties moved for reconsideration, which the court granted in part and denied in part. In all, the court ruled upon a total of 200 requests for findings of fact and rulings of law submitted by both parties.

On appeal, the petitioner argues that the trial court erred in: (1) its distribution of the marital property; (2) excluding the Massachusetts verdict from the marital estate; (3) disallowing expert testimony about the value of his LMO stock; (4) relying upon the stock redemption agreement to value the stock; (5) awarding lifetime alimony; and (6) ordering him to maintain the respondent's health insurance.

We sustain the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law. *In the Matter of Fowler and Fowler*, 145 N.H. 516, 519 (2000). The trial court has broad discretion in determining matters of property distribution and alimony in fashioning a final divorce decree. *Id.* Absent an unsustainable exercise of discretion, we will not overturn its ruling or set aside its factual findings. *In the Matter of Telgener & Telgener*, 148 N.H. 190, 191 (2002).

The petitioner first argues that the trial court erred in awarding the respondent such a substantial portion of the marital estate without making

specific findings to justify doing so. He does not dispute the award of the marital home and the Rhode Island real estate to the respondent. Rather, he contends that the total distribution of the marital assets represents an eighty-two percent allocation in favor of the respondent. He further asserts that the court's rote recitation of the statutory factors to be considered for asset distribution is not sufficient to satisfy the legislative directive requiring written reasons to justify an unequal division of property. *See* RSA 458:16-a, III (1992). The respondent, on the other hand, disputes the petitioner's calculation of the property division and contends that it results, at most, in a sixty-eight/thirty-two percent apportionment in her favor, which she asserts was equitable.

In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed "just" based upon the evidence presented and the equities of the case. *Rahn v. Rahn*, 123 N.H. 222, 225 (1983). Under RSA 458:16-a, II (1992), an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more of the factors designated in the statute. RSA 458:16-a, III requires the trial court to "[provide] written reasons for the division of property which it orders."

Although we need not determine the exact percentage breakdown in this case of the trial court's division of marital property, we believe that the respondent's figures more accurately reflect the actual division. In his calculation, the petitioner omitted from his award $169,635, representing his one half of the value of the LMO stock, and did not account for the fact that he was awarded the parties' interest in the assets of the LMO Trust. In addition, his calculations failed to properly account for the fact that the trial court allowed the respondent to withdraw $56,000 from the parties' investment accounts before dividing them. Finally, the petitioner's calculation includes more than $500,000 related to the Massachusetts verdict, including accrued interest. As the court found, "the . . . verdict is currently under appeal, with any outcome uncertain."

We hold that the trial court's division of property constituted a sustainable exercise of discretion and that the court provided sufficient reasons justifying its unequal apportionment. The court issued a fifteen-page divorce decree in which it stated that, in its unequal division of the marital assets, it considered the fault of the petitioner for the divorce, the length of the parties' marriage, the respondent's ability to acquire future assets, the respondent's needs and the petitioner's ability to pay. Moreover, it ruled upon a total of 200 requests for findings of fact and rulings of law submitted by the parties. *See In the Matter of Valence and Valence*, 147 N.H. 663, 669-70 (2002).

Specifically, the trial court found that the petitioner's abusive treatment of the respondent caused the breakdown of the marriage and caused the respondent substantial pain and suffering for which she required treatment. The court found that the petitioner was verbally and emotionally abusive towards the respondent and "would frequently belittle, yell at, swear at, criticize, call her names, embarrass, and/or insult [her]," sometimes in the presence of their children. As a result, the respondent suffers from depression, anxiety and panic attacks and is currently in counseling and under the care of a physician. The court also concluded that the disparity in the parties' financial situations resulted, to a great extent, from the respondent's commitment to the marital home and children, which occurred at the request of the petitioner. Moreover, the court considered the need of the respondent, as the custodial parent, to occupy the marital home and her limited opportunity for future acquisition of capital assets and income. We conclude that the trial court acted within its discretion in ordering an unequal division of property. See RSA 458:16-a, II.

Next, the petitioner contends that the respondent's verdict from the Massachusetts lawsuit is marital property subject to equitable division under RSA 458:16-a, I (Supp. 2002). He further argues that the trial court's decision to award the entire verdict and its accrued interest to the respondent constituted an unsustainable exercise of discretion. We assume, without deciding, that the verdict here is marital property subject to an equitable division. See In the Matter of Preston and Preston, 147 N.H. 48, 49-50 (2001). However, on the record before us, we cannot say that the trial court did not include it in the marital estate. Therefore, we must determine whether awarding the entire verdict to the respondent was inequitable or constituted an unsustainable exercise of discretion.

A trial court is not precluded from awarding a particular asset in its entirety to one party. See Holliday v. Holliday, 139 N.H. 213, 216 (1994). In addition to the specific factors enumerated in RSA 458:16-a, II, the trial court can consider "[a]ny other factor that [it] deems relevant" in equitably distributing the marital property. If the court's findings can reasonably be made on the evidence presented, they will stand. Holliday, 139 N.H. at 217.

■ Here, the trial court granted the following requests submitted by the respondent:

> That the petitioner, Peter Letendre, did not actively participate or support the initiation and/or progress of the . . . civil suit in Massachusetts, and has not contributed towards the expenses and fees associated with the same.

> That there remain outstanding claims for expenses and/or fees by counsel for the respondent relative to the Massachusetts proceedings, to which the petitioner has not contributed and continues to fail to contribute.
>
> That the Massachusetts action is premised upon a personal loss and injury to the respondent, relative to discrimination against the respondent, the likes of which was not suffered or sustained by the petitioner, Peter Letendre.
>
> That the said Peter Letendre was never personally injured by the causes in action for which the Massachusetts proceedings were commenced, has not sought to join in the action, and has never sought any personal injury or damages associated with the same.

In addition, the court heard evidence that the petitioner "thought [the lawsuit] was a joke" and would make "snide remarks" to the respondent about it. Indeed, as a male member of the country club, the petitioner was one of the members at risk in the discrimination case. For these reasons, we hold that the trial court's decision to award the entire verdict to the respondent is a sustainable exercise of discretion.

The petitioner next argues that the trial court erred in disallowing proposed expert testimony addressing the fair market value of his business stock. He contends that he disclosed his expert's identity to the respondent's counsel nearly a year before trial and, therefore, the respondent had ample opportunity to depose him. He also contends that he believed that the discovery deadline was meant "as the date to exchange expert reports provided the exchange was mutual."

Disclosure of expert witnesses is governed by Superior Court Rule 35(f), which states that "[w]ithin thirty (30) days of a request by the opposing party, or in accordance with an order of the Court following a discovery conference, a party shall be required to supply a Disclosure of Expert Witness(es) . . . ." Specifically, a party is entitled to the identity of the opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions. *O'Donnell v. Moose Hill Orchards*, 140 N.H. 601, 604 (1996). Failure of a party to supply such information will result in the exclusion of expert testimony unless good cause is shown to excuse the failure to disclose. *Id.* The admission or exclusion of expert testimony is within the trial court's sound discretion. *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 806 (1996).

■ We hold that the trial court's decision to exclude the petitioner's expert from testifying is sustainable on the record before us. The

petitioner did not comply with the discovery deadline mandated by the trial court. Even if he misunderstood the meaning of the discovery date, as he claims, he failed to comply with the respondent's repeated requests for information in violation of Superior Court Rule 35(f). The petitioner's failure to provide the respondent with complete information bearing directly on the valuation of the business prevented the respondent from adequately preparing for trial. *See In the Matter of Jones and Jones*, 146 N.H. 119, 122 (2001).

■ The petitioner further argues that the trial court lacked competent evidence upon which to value his business stock and that it erroneously relied upon the stock redemption agreement option price as evidence of the stock's fair market value. He cites to *Drake v. Drake*, 809 S.W.2d 710, 713 (Ky. Ct. App. 1991), for the proposition that "the majority position on this issue is that a buy-sell agreement for a closely held corporation which sets or provides a method for setting value on its shares for purposes of distribution is not binding [upon a spouse in a divorce action], rather it is to be weighed with other factors in determining value."

We need not decide whether we agree with the view adopted in *Drake* because, here, the trial court did not rely exclusively upon the stock redemption agreement to confirm that the price set in the agreement represented the fair market value of the petitioner's LMO stock. Rather, the court heard testimony from both parties as well as from the corporation's accountant. It also received documentation, including corporate tax returns and financial statements. We note, furthermore, that the trial court could have found the stock redemption agreement option price in this case particularly reliable because the shareholders revalued the option price each year and last recalculated it six months prior to trial. While the court might have had more accurate information if an expert had testified, the exclusion of the expert's testimony and appraisal resulted from the petitioner's failure to comply with the rules and court orders regarding discovery, and he cannot now benefit from his noncompliance. *See Jones*, 146 N.H. at 123.

The petitioner next argues that the trial court's award of lifetime alimony failed to take into account evidence of his ability to pay, the respondent's earning capacity and her actual financial needs in light of the court's property division. We disagree. RSA 458:19, I (Supp. 2002) provides that the trial court shall award alimony if: (1) the party in need lacks sufficient income, property, or both to provide for his or her reasonable needs, considering the marital standard of living; (2) the payor is able to continue to meet his or her own reasonable needs, considering the marital standard of living; and (3) the party in need cannot be self-

supporting through appropriate employment at a standard of living that meets reasonable needs, or is the custodian of the parties' child, whose circumstances make employment for the custodian outside the home inappropriate.

> In determining the amount of alimony, the court shall consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(l); and the federal tax consequences of the order.

RSA 458:19, IV(b) (Supp. 2002).

Here, the court awarded the respondent alimony in the amount of $3,000 per month until she either died or remarried. The court noted:

> The [respondent] does not have a high school diploma. Through-out this marriage, she has been a stay at home Mom. She has periodically worked at minimum wage jobs or unsuccessful ventures. Further, she is learning disabled by virtue of her dyslexia. She clearly has a need for alimony and Peter Letendre clearly has an ability to pay.

The court further stated that it took into account the fault of the petitioner, the length of the parties' marriage, the respondent's needs and her ability to acquire future assets.

Given the respondent's age, level of formal education and modest job history, we hold that the trial court did not commit an unsustainable exercise of discretion in concluding that the respondent lacked sufficient income to provide for her reasonable needs and that she could not be self-supporting through appropriate employment. The parties were married for seventeen years, during which the respondent essentially remained at home to care for the children, a choice the petitioner fully supported and encouraged. Because of the petitioner's maltreatment of the respondent, which caused the breakdown of the marriage, the respondent suffers from depression, anxiety and panic attacks, requiring medical attention. At the time of the hearing, she was forty-eight years of age, had not graduated from high school, and earned approximately $4,800 per year as a retail sales clerk without any pension, retirement or health benefits. The petitioner, on the other hand, earned over $134,000 per year, indicating

that he is able to continue to meet his own reasonable needs after paying the amount of alimony awarded.

■ Finally, the petitioner contends that, in light of the property division and award of alimony, the trial court erred in ordering him to maintain health insurance for the respondent and in failing to consider its tax consequences. He argues that the court's failure to explain the basis for the unlimited duration of this award constitutes legal error and that he should not be required to provide his former spouse with health insurance for the duration of her life absent significant pre-existing medical conditions precluding her from obtaining her own coverage.

We disagree with the petitioner that the trial court failed to explain the basis of its order. The court found that, unlike the petitioner, the respondent did not have health benefits through her employment and that, due to her age and job history, her future employment opportunities were limited, which directly affects the issue of health insurance. Moreover, the court found that she had ongoing medical issues, caused in large part by the petitioner's abuse. Although the petitioner submitted sixty-four requests for findings and rulings, he made no specific requests in connection with health insurance. For these reasons, we hold that the court's order taken in its entirety clearly supports its decision.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.