Derry Family Division
No. 2005-168

IN THE MATTER OF REBECCA HARVEY AND PAUL E. HARVEY, JR.

Argued: January 19, 2006
Opinion Issued: April 26, 2006

426

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*William E. Brennan* and *Jaye L. Rancourt* on the brief, and *Ms. Rancourt* orally), for the respondent.

DALIANIS, J. The petitioner, Rebecca Harvey, appeals from a final divorce decree recommended by a Marital Master (*Bruce F. DalPra*, Esq.) and approved by the Derry Family Division (*Sadler*, J.). The respondent, Paul E. Harvey, Jr., cross-appeals certain provisions of the decree. We affirm in part, vacate in part, and remand.

## I. Background

The following facts were found by the trial court or are supported by the record. The parties married in August 1989 and have four children, all under the age of eighteen. The parties began living apart in October 2002.

Prior to the marriage, the petitioner was employed in Virginia as a legislative assistant. When she and the respondent became engaged, they discussed her role in the marriage and decided that she would be the primary caretaker for their children. After the parties married, the petitioner earned a law degree. Although she had no intention of practicing law, she took and passed the New Hampshire bar examination. The petitioner remained at home during the marriage to care for the children and run the household. She planned all appointments, activities and events for the children. She also planned social events for family and friends, and volunteered with several organizations in the Portsmouth area. At the time of the divorce, she was employed as a part-time teacher's aide and cafeteria monitor, and occasional substitute teacher. She was also being treated for depression and anxiety as a result of the divorce proceedings.

The respondent is the sole shareholder of a dental practice. His father, Paul Harvey Sr., had established the practice and continues to work there. Harvey Sr. controls all financial aspects of the practice, including salaries. At the time of the divorce, the respondent was earning an annual salary of approximately $190,000, plus bonuses. The respondent received exceptionally large bonuses in 2000 and 2001 compared to previous years.

The parties owned numerous parcels of real estate. Prior to the marriage, the respondent and his mother, Caroline Harvey, purchased property at 48 Ball Street in Portsmouth. The respondent paid a deposit of $25,000 and his parents contributed an additional $50,000. The original understanding was that the respondent and his parents would build homes on the property. At the time of the purchase, a dilapidated cottage and a detached garage occupied the property. The respondent's parents paid $21,000 to renovate the cottage. After the parties married, they lived in the renovated cottage. The parents again expressed their intent to build a

home on the property, but, upon the objection of the petitioner, the respondent asked his parents not to build there. His parents agreed and continued to assist the respondent in making mortgage payments on the property through December 1994, for a total contribution, including the $50,000 down payment, of $275,000.

In December 1997, the parties received a construction loan to build their home at 48 Ball Street. Caroline Harvey removed her name from the deed, a requirement of the bank in order to close the loan. Prior to and during the construction phase, the parties lived in a house on Newcastle Avenue in Portsmouth. The respondent had purchased the Newcastle Avenue property prior to the marriage. He used savings as a down payment and financed the balance. After the parties were married, the property was rented and the rental income was used to pay its mortgage and expenses.

The respondent and his brother also owned, as tenants-in-common, rental properties at 77 Middle Road and 815 Middle Street in Portsmouth. Prior to the parties' marriage, the respondent's parents and grandparents had provided the down payments for these properties. The mortgages were paid off during the course of the marriage. At times, the respondent's portion of the rental income was used to pay household expenses. The respondent was responsible for paying the bills on the properties and his brother was responsible for collecting and depositing the rental income. At some point, the respondent began to deposit the rental income into investment accounts established to defray the children's future college expenses.

Before the parties' marriage, the respondent also purchased a condominium and two timeshares near Attitash Mountain in Bartlett. He paid off all three mortgages either prior to or during the course of the marriage. Finally, in 1999 and 2000, the respondent acquired from Harvey Sr. an 8.2% interest in 610 Islington Street in Portsmouth, the real estate that houses the dental practice.

On December 2, 2004, the trial court approved a final divorce decree. It awarded the parties joint legal custody of the children, with the petitioner to have primary physical custody. The trial court also ordered the respondent to pay monthly child support in the amount of $6,606, in accordance with the child support guidelines, as well as forty-five percent of his net annual bonus. It ordered the parties to use the value of the children's investment accounts for future college expenses. It also awarded the petitioner monthly alimony in the amount of $3,000 for a period of three years, as she would "require a reasonable period of time to refrain [sic], seek employment and enter the work force."

The trial court valued the marital estate at approximately $2.9 million and awarded fifty-five percent, or approximately $1.6 million, to the

petitioner, due to the length of the marriage, her role as the primary caretaker of the family throughout the marriage, her role post-divorce as primary custodial parent, and her relatively modest earning capacity and ability to acquire capital assets.

The respondent was awarded, among other things, the rental properties on Middle Road and Middle Street, the condominium and the timeshares near Attitash Mountain, his interest in the dental practice and the building that houses the dental practice, certain stock interests, and an approximate one-half interest in the retirement accounts. The petitioner was awarded, among other things, $34,000 in proceeds from a joint checking account, and an approximate one-half interest in the retirement accounts.

In addition, under the decree, the respondent was permitted to pay to the petitioner her remaining portion of the property settlement in monthly installments over a fifteen-year period. Her remaining portion of the property settlement was approximately $300,000 or $800,000, depending upon whether the respondent exercised his option to acquire the petitioner's equity in the marital home on Ball Street and transfer to her the unencumbered interest in the property on Newcastle Avenue. The trial court granted the respondent thirty days to exercise this option. The trial court also ordered the parties to reimburse the respondent's parents $275,000 for their contributions. The trial court denied the petitioner's motion to reconsider.

On March 29, 2005, the trial court acknowledged a mathematical error in its computation of marital assets awarded to the petitioner. Instead of increasing the amount of the monthly property settlement payment, as requested by the petitioner, the trial court extended the payment schedule from fifteen years to twenty-three years. The trial court denied the petitioner's motion to reconsider the payment extension. This appeal and cross-appeal followed.

On appeal, the petitioner argues that the trial court erred by: (1) awarding her alimony that was inadequate in duration and amount; (2) permitting the respondent to pay her remaining portion of the property settlement over a twenty-three year period; and (3) ordering the parties to reimburse the respondent's parents for their financial contributions to the equity of the marital home. The respondent argues on cross-appeal that the trial court erred by: (1) including certain property in the marital estate; (2) failing to award an unequal property settlement in his favor; and (3) declining to discount his interest in certain real estate holdings.

## II. Standard of review

The trial court is afforded broad discretion in determining matters of property distribution and alimony in fashioning a final divorce decree. *In the Matter of Sutton & Sutton*, 148 N.H. 676, 679 (2002). We will not overturn a trial court's decision on these matters absent an unsustainable exercise of discretion. *See id.*

## III. Issues on appeal

### A. Alimony

We first address whether the alimony award was inadequate in duration or amount. The trial court awarded the petitioner monthly alimony of $3,000 for a period of three years. RSA 458:19, I (Supp. 2005) provides that the trial court shall award alimony if: (1) the party in need lacks sufficient income, property, or both to provide for his or her reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; (2) the payor is able to continue to meet his or her own reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs, or is the custodian of the parties' child, whose condition or circumstances make it appropriate that the custodian not seek employment outside the home.

In determining the amount of alimony to be awarded, a trial court shall consider the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II; and the federal tax consequences of the order. RSA 458:19, IV(b). Further, the court may consider the economic contribution of each party to the value of their respective estates, as well as the non-economic contributions to the family unit. *See* RSA 458:19, I(d).

The petitioner first contends that she is entitled to alimony for her lifetime, or, at a minimum, until the parties' youngest child reaches the age of eighteen, because: (1) the parties agreed that the petitioner would forego employment outside the home to raise the children; (2) she will be forty-four years of age at the time that the alimony award expires in 2007; (3) she has been absent from the workforce since 1989; (4) all four children will be under the age of eighteen at the time the award expires; (5) she will have difficulty finding any employment that would permit her to

accommodate the ongoing needs of her children; and (6) her mental health issues affect her ability to obtain and maintain employment. We disagree.

In making the alimony award, the trial court considered the factors enumerated above. It considered explicitly: the education, vocational skills, occupation and previous employment history of the petitioner; the parties' agreement that the petitioner would be the primary caregiver for the children; and the continued need for the petitioner to be available for the children given the custodial schedule in the decree. While the trial court acknowledged that "employment as an attorney was not an option," it found that the petitioner possessed the skills and intelligence to perform several tasks in the legal field, including title work, research and brief-writing. The trial court also considered the testimony of Mary Sheffer, Esq., the Assistant Dean for Career Services at Franklin Pierce Law Center, who opined that the petitioner would have an opportunity to obtain a job in the legal field if she followed a "four-step plan" that included continuing education classes and volunteer legal work. She further opined that it could take three or four years to implement such a plan and obtain suitable employment. Upon that basis, the trial court concluded that, "with training, the Petitioner w[ould] be able to become gainfully employed and eventually support herself."

The trial court also considered the testimony of Timothy Breitholtz, M.D., a forensic psychiatrist, who testified that the petitioner's ability to work was severely impaired due to her mental health issues. The trial court found, however, that her mental health condition "[wa]s not expected to be long term and was classified more as situational given the state of the divorce proceedings."

We have recognized that the primary purpose of alimony is rehabilitative. *In the Matter of Fowler and Fowler*, 145 N.H. 516, 520 (2000). "Rehabilitative" alimony is based upon the theory that spouses are equally able to function in the job market and to provide for their own financial needs. *Id.* Alimony, therefore, is designed to encourage the recipient to establish an independent source of income. *Id.* We have held that the rehabilitative principle is not controlling, however, where the supported spouse suffers from ill health and is not capable of establishing an individual source of income, or where the supported spouse in a long-term marriage lacks the requisite job skills to independently approximate the standard of living established during the marriage. *Id.*

The petitioner relies primarily upon *In the Matter of Letendre & Letendre*, 149 N.H. 31 (2002), to argue for a lifetime alimony award. In *Letendre*, the parties were married for seventeen years, during which time the husband served as president of a corporation and earned an annual salary of $134,000. *Id.* at 32, 39-40. The wife, by contrast, worked very little

during the marriage, as she did not have a high school diploma, and she devoted most of her time to maintaining the parties' household and caring for their children. *Id.* at 39. The wife also suffered from dyslexia, which affected her ability to obtain and maintain employment. *Id.* The trial court recognized that, as a result of the husband's maltreatment of the wife, which caused the breakdown of the marriage, she suffered from depression, anxiety and panic attacks, requiring medical attention. *Id.* The trial court awarded her monthly alimony in the amount of $3,000 until she either died or remarried. *Id.* On appeal, we held that the trial court did not commit an unsustainable exercise of discretion in light of its consideration of the length of the marriage, fault of the parties, and the wife's age, level of formal education, modest job history and significant learning disability. *Id.*

■ The petitioner's reliance upon *Letendre*, however, is misplaced. Unlike the wife in *Letendre*, the petitioner has a law degree and has passed the New Hampshire bar examination. The trial court found that the petitioner could become gainfully employed and eventually support herself. The record also supports the trial court's order of alimony for a three-year period as there was evidence that it could take three to four years for the petitioner to obtain law-related employment. Moreover, the trial court found that the petitioner's health issues were temporary and that the respondent's treatment of the petitioner was not the primary cause of the breakdown of the marriage. We, thus, conclude that the trial court did not unsustainably exercise its discretion in awarding alimony for a period of three years.

We also note that the petitioner has the right to petition for renewal of the alimony award upon its termination in 2007. *See* RSA 458:19, VII (2004). RSA 458:19, VII provides, in pertinent part: "In cases where the court issues an order for ... alimony for a definite period of time, such order may be renewed, upon the petition of either party, provided that such petition is made within 5 years of the termination date of the ... alimony order."

The petitioner next argues that the monthly alimony amount of $3,000 was insufficient for her to maintain a standard of living comparable to the one the parties had enjoyed during the course of their marriage and also failed to account for the disparate monthly income of the parties. She contends that, because of her reduced monthly income, she has had to maintain part-time employment as a cafeteria monitor and has eliminated certain expenses incurred by the children, including their cellular telephones and various extracurricular activities. While the trial court did not make findings explicitly relating to the standard of living during the

parties' marriage, it acknowledged that the parties had accumulated significant assets during the marriage.

We have previously held that "it is essential that the amount of alimony awarded be sufficient to cover the wife's needs, within the limits of the husband's ability to pay." *Murphy v. Murphy*, 116 N.H. 672, 675 (1976). In considering the respondent's ability to pay, the trial court found that the respondent earned a salary of approximately $21,000 per month exclusive of bonuses and rental income. It also found, however, that the "extraordinarily high bonuses paid in 2000 and 2001 were a result of a manipulation of [Harvey] Sr.'s salary ... and not a true reflection of the respondent's share of the profits for those two years," but it ordered the respondent to pay as child support forty-five percent of any net bonus.

■ While it is unclear whether the trial court considered the respondent's child support obligations in deciding the amount of alimony, we have previously held that a trial court has the discretion to consider child support in determining the obligor's resources for purposes of establishing alimony. *In the Matter of Crowe & Crowe*, 148 N.H. 218, 224 (2002). After subtracting his monthly alimony and child support obligations, the respondent had an approximate monthly income of $11,000, exclusive of bonuses and rental income. Petitioner concedes that her monthly income will be approximately $11,550 during the three years that she will be receiving alimony in the event that she obtains part-time employment ($3,000 alimony, $6,606 child support, and $1,950 of anticipated part-time income).

To support her argument that the alimony award is insufficient the petitioner relies upon *Fowler*, where we held that the amount of alimony was insufficient to provide the supported former spouse a standard of living comparable to the one that the parties had enjoyed during the course of their marriage. *Fowler*, 145 N.H. at 521. In *Fowler*, the parties were married for twenty-four years, during which time the husband attended chiropractic college and joined a chiropractic practice, earning between $130,000 and $160,000 per year. *Id.* at 517. The wife, by contrast, had only a high school diploma and did not work during the marriage, as she was discouraged from doing so by her husband. *Id.* at 521. At the time of the divorce, she intended to work as a switchboard operator and would have earned only $800 per month. *Id.* at 517. Under the property settlement, she received a total cash payment of approximately $111,000. *Id.* at 518. The trial court also awarded the wife weekly alimony in the amount of $300 for six years, upon the condition that she complete a bachelor's degree during that period. *Id.* at 518. On appeal, we held that the alimony award was inadequate in light of the length of the marriage,

the marital standard of living, the wife's modest job history, her non-economic contributions to the marriage and the husband's ability to pay additional alimony. *See id.* at 520-21.

■ *Fowler* is factually distinguishable, however, from this case. The alimony award here was substantially greater in amount than that awarded in *Fowler*, and, unlike the wife in *Fowler*, the petitioner possesses a law degree and many skills which could assist her in obtaining employment. In addition, she was awarded a substantial property settlement in the amount of $1.6 million.

Finally, we note that expenses concerning the children are included in the child support award so her claim that she had to deny her children cellular telephones and certain extracurricular activities carries no weight on this issue. *In the Matter of Coderre & Coderre*, 148 N.H. 401, 406 (2002). In light of these considerations, we conclude that the trial court did not unsustainably exercise its discretion by awarding to the petitioner monthly alimony in the amount of $3,000.

### B. Property settlement

#### 1. Extended payment schedule

The petitioner next argues that the trial court unsustainably exercised its discretion by permitting the respondent to pay her a significant portion of her interest in the marital estate over a twenty-three year period. The trial court valued the marital estate at $2.9 million and awarded fifty-five percent, or approximately $1.6 million, to the petitioner. Under the decree, the respondent was permitted to pay to the petitioner her outstanding share of the property settlement over a fifteen-year period, but the trial court later extended the property distribution schedule from fifteen to twenty-three years to account for a mathematical error in its computation of the marital assets awarded to the petitioner. Her remaining portion of the property settlement was approximately $300,000 or $800,000, depending upon whether the respondent exercised his option to acquire the petitioner's equity in the marital home on Ball Street.

The petitioner contends that the extended payment schedule prevents her from exercising the investment opportunities that would otherwise accompany a substantial property settlement, and that it seriously affects her ability to "start a new life" following the dissolution of the marriage. She further contends that the trial court awarded the respondent sufficient property, the sale of which would produce a substantial portion of the amount owed to her. RSA 458:16-a (2004), entitled "Property Settlement," provides that "[w]hen a dissolution of a marriage is decreed, the court may order an equitable division of property between the parties."

RSA 458:16-a, II. The statute further states that "the court shall presume that an equal division is an equitable division . . . unless the court decides that an equal division would not be appropriate or equitable after considering one or more of [fifteen statutory factors]." *Id.* The statute is silent, however, as to the considerations that should guide a trial court in awarding a property settlement payable by installment over time and in fashioning the length of such a payment schedule.

We have yet to address these issues. We are aware of one case in which the trial court approved a stipulation between the parties providing that the husband would pay the wife her property settlement award of $240,000 in monthly installments over the course of a twenty-year period, regardless of a future change of circumstances. *Lawton v. Lawton*, 113 N.H. 429, 430 (1973). *Lawton*, however, affords us little guidance, as the parties stipulated to the lengthy payout. *Id.* Furthermore, we were called upon in *Lawton* only to address whether the property settlement amount could be subject to modification; we were not requested to address the propriety of such a lengthy payout scheme. *Id.* at 430-31.

The respondent cites no relevant authority in support of such an extended payment schedule. Our review of case law from other jurisdictions reveals that certain States have approved extended payment schedules where there were substantial non-liquid marital assets and a lump-sum cash payment would create a *serious* financial hardship for the obligor. *Compare, e.g., Bettinger v. Bettinger*, 396 S.E.2d 709, 716-18 (W. Va. 1990) (upholding a trial court award that ordered the husband to pay the wife her sizable marital share of the husband's illiquid interest in corporate stock in monthly installments over a ten-year period), *Dodge v. Dodge*, 435 A.2d 407, 408 (Me. 1981) (upholding a trial court order that allowed the husband to pay the wife her $100,000 marital share over a ten-year period where the husband's major asset was his illiquid business interest), *and Phillips v. Phillips*, 464 P.2d 876, 880 (Colo. 1970) (finding a five-year period insufficient for the husband to pay the wife her marital share of $300,000 where the husband could not immediately liquidate his major financial asset without likely becoming bankrupt and he could not obtain a loan), *with Hertz v. Hertz*, 657 P.2d 1169, 1173 (N.M. 1983) (disallowing a trial court order that permitted the husband to pay the wife her marital share over a ten-year period where there was no showing that the husband was unable to make financial arrangements to pay the wife outright). Our review of case law outside New Hampshire, however, did not reveal any case where a court of last resort approved a property settlement scheme that allowed payment of such a significant share of the marital estate over an exceedingly protracted period of time, as in this case.

We acknowledge the frustration and inconvenience that may occur when one former spouse must sell part of his or her assets to make the payments required by a divorce judgment. It is an inevitable result of virtually every property division, however, that a former spouse who is required to turn over assets to the other at the termination of the marriage has fewer assets after the division than before. *See Lien v. Lien*, 278 N.W.2d 436, 442 (S.D. 1979).

■ Furthermore, we recognize the desirability, where practicable, of granting each spouse complete and immediate control over his or her share of the marital estate in order to ease the transition of the parties after dissolution. Property settlements should be interpreted so as to avoid future conflicts between parties. *See Bonneville v. Bonneville*, 142 N.H. 435, 438 (1997). Any court order that postpones distribution, thereby financially linking the parties to one another following a judgment of dissolution, invites future strife when one of the parties seeks to enforce the order. In addition, the spouse awaiting distribution could find him or herself deprived of, or forced into further litigation concerning, the ordered share of marital property by intervening events such as the obligor's bankruptcy, fraudulent transfer of assets, or untimely death. As such, a trial court should award a property settlement to be effected immediately where practicable. In the event that there is no other recourse than to order a property settlement to be paid by installment, the trial court should consider, when fashioning the duration of such distribution, among other things, the liquidity of marital assets, the obligor's ability to borrow and the threat of serious financial hardship for the obligor.

■ While the trial court did not articulate its rationale for awarding payout over twenty-three years, it did find that the respondent was only a partial owner of several real estate assets subject to the marital estate and that Harvey Sr. still had financial control over the dental practice. The respondent contends that he is not in the position to liquidate these assets immediately to satisfy his financial obligations under the decree. We conclude, nonetheless, that the length of the ordered payout is unreasonable and we agree with the petitioner that it both jeopardizes her ability to maximize her investment potential and impedes the transition of the parties following dissolution of the marriage. Accordingly, we hold that the trial court unsustainably exercised its discretion by allowing the respondent to pay a substantial portion of the petitioner's share of the marital estate over a twenty-three year period. Upon remand, the trial court should consider a property settlement payable by an immediate division of assets or lump-sum payment if practicable; if not, the trial court

should consider deferred installment payments over a *reasonable* period of time in the light of the considerations articulated above.

### 2. Payment to respondent's parents

Next, the petitioner argues that the trial court erred by ordering the parties to pay $275,000 to the respondent's parents. In light of the financial contributions that the respondent's parents made to the Ball Street property, the trial court found it "equitable to reimburse them for their direct contribution to the equity in the real estate, which consisted of $225,000 of mortgage payments . . . plus $50,000.00 which went directly to the equity in the property." The trial court did not find, however, that either party had an enforceable legal obligation to reimburse the respondent's parents for these financial contributions.

We have recognized that a "moral" obligation for repayment cannot properly be characterized as a debt chargeable to the marital estate. *Azzi v. Azzi*, 118 N.H. 653, 656-57 (1978). In *Azzi*, the University of New Hampshire paid the husband a sum of approximately $12,000 while he was on sabbatical from his teaching position at the university. *Id.* at 656. When the husband did not return to teaching at the end of the sabbatical, the university demanded reimbursement. *Id.* Although the husband believed the university's claim unsupportable, he decided to repay the money rather than jeopardize his relationship with the university. *Id.* In his divorce action, the husband argued that he should be credited with one-half of $12,000 in the property settlement since he would eventually have to repay that amount. *Id.* We affirmed the trial court's rejection of that argument since the husband's eventual repayment of the $12,000, if it occurred, would not "represent the satisfaction of a legal obligation but rather a moral one." *Id.* at 656-57.

We agree with the petitioner that, to the extent that the respondent intends to reimburse his parents for their contributions to the equity of the Ball Street property, he would be doing so gratuitously and not as a result of an enforceable legal obligation. Accordingly, the trial court unsustainably exercised its discretion in ordering such a reimbursement and reducing the marital estate by $275,000.

### IV. Issues on cross-appeal

#### A. Inclusion of certain interests in the marital estate

On cross-appeal, the respondent argues that the trial court committed an unsustainable exercise of discretion by including in the marital estate his Attitash condominium and two timeshares, his rental properties on

Middle Street and Middle Road, and his interest in the dental practice and the building occupied by the practice. He contends that these assets were either acquired prior to the marriage or acquired by gift during the marriage. With respect to these assets, the trial court stated that it "shall and must consider their values in the overall distribution of assets." We agree.

RSA 458:16-a, I (2004) defines as marital property: "[A]ll tangible or intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I, makes no distinction between property brought to the marriage by the parties and that acquired during marriage. *See* RSA 458:16-a, I. In addition, the statute does not exclude property gifted to one spouse during the course of the marriage. *See id.*; *see also Weeks v. Weeks*, 124 N.H. 252, 256 (1983). Regardless of the source, all property owned by each spouse at the time of divorce is to be included in the marital estate. *Crowe*, 148 N.H. at 222; *see also Hoffman v. Hoffman*, 143 N.H. 514, 522 (1999). Given the broad definition of "marital property," we conclude that the trial court did not unsustainably exercise its discretion by classifying the respondent's interest in certain real estate parcels, timeshares and the dental practice as marital property.

In the alternative, the respondent contends that the trial court erred by failing to award an unequal distribution of the marital estate in his favor. In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed "just," based upon the evidence presented and the equities of the case. *Letendre*, 149 N.H. at 35. The trial court has broad discretion in determining an equitable distribution of the marital estate. *In the Matter of Jones and Jones*, 146 N.H. 119, 123 (2001).

In accordance with RSA 458:16-a, III, the trial court made written findings in support of the property division. It found the division equitable for the following reasons: (1) the length of the marriage; (2) the petitioner's post-divorce role as the primary physical custodian of the children; (3) the respondent's ability to acquire capital assets being greater than that of the petitioner; (4) the respondent's current and future earning capacity far outweighing that of the petitioner; and (5) the petitioner was not employed outside of the home during the marriage, as her primary role was to care for the children and support the respondent in the development of his career. Notwithstanding these factors, the respondent argues that the trial court erred by failing to consider that he owned certain contested assets prior to the marriage, that no marital assets were used to enhance their value, and that the rents, where applicable, were not

used to enhance the parties' standard of living during the course of the marriage. We disagree.

The trial court made written findings concerning the ownership and nature of the contested assets. The parties were married in August 1989 and separated in October 2002. The trial court found that although the respondent's parents had provided the down payments for the Middle Road and Middle Street rental properties, the respondent and his brother paid off those mortgages during the course of the marriage. The trial court also found that the respondent had the responsibility for paying the bills on those properties and that he deposited the profits into investment accounts for the children to defray future educational expenses. It ordered the parties to continue to use the children's investment accounts for that purpose. With respect to the Attitash condominium and timeshares, the trial court found only that these properties were purchased prior to the marriage. In addition, the record reveals that the respondent acquired his interest in the real estate that houses the dental practice in 1999 and 2000. Finally, the trial court found that Harvey Sr. transferred to the respondent his interest in the dental practice incrementally from 1991 to 2001.

The record shows that, with the possible exception of the timeshares, the respondent fully acquired his interests in all of his real estate holdings and the dental practice during the course of the marriage. While RSA 458:16-a, II(m) and (n) permit the trial court to consider the value of property acquired prior to the marriage and by gift in ordering an unequal division, it has the discretion, nevertheless, to accord greater weight to *other* statutory factors in considering the overall equities of the circumstances. RSA 458:16-a, II. For example, although the respondent argues that the petitioner did not financially contribute to these assets, the trial court relied upon the petitioner's non-economic contributions as the primary homemaker and caretaker for the children in fashioning the property settlement. Such consideration was proper. *See Dombrowski v. Dombrowski*, 131 N.H. 654, 660 (1989). In *Dombrowski*, the defendant argued that he should receive a significant apportionment of marital assets because, among other things, he created the marital wealth. *Id*. We rejected that argument and acknowledged the trial court's recognition that the parties' long-term marriage was an "economic partnership" in which "both parties played an equal role in the acquisition of assets—the plaintiff primarily as homemaker and caretaker of children, and the defendant as the 'primary breadwinner.'" *Id*.

In light of these considerations, we hold that the trial court did not unsustainably exercise its discretion by awarding a slightly unequal property distribution in favor of the petitioner.

*B. Consideration of evidence of illiquidity of certain interests*

■ Finally, the respondent cross-appeals the trial court's refusal to hear testimony concerning a "discounting" of the respondent's fractional interest in certain parcels of real estate utilizing an analysis similar to the valuation of a closely-held business or corporation. In support of its ruling, the trial court stated:

> The real estate appraiser testified that such an analysis was used in hearings involving the IRS estate taxes, gift taxes and lawsuits between family members. This court finds a divorce proceeding is distinguished from the aforementioned issues. Specifically, this court is required to find a market value solely to arrive at an equitable distribution of property. To apply a "discount" to the Respondent's interest is not realistic. To do so also invites needless litigation and injects yet another element of extreme uncertainty for the parties, trier of fact and on appeal.

Trial judges have wide discretion in the admission or exclusion of expert opinion and we will uphold the trial court's ruling unless there is a clear unsustainable exercise of discretion. *See Tullgren v. Phil Lamoy Realty Corp.*, 125 N.H. 604, 609 (1984); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The record reflects that the respondent's expert could not identify actual market evidence upon which to base his opinion. The respondent also concedes that there is no case law in New Hampshire to support the "discounting" of fractional interests in real estate to value property in the divorce context. In light of these factors, we conclude that the trial court did not commit an unsustainable exercise of discretion by refusing to allow the respondent to present this expert testimony.

> *Affirmed in part; vacated in part; remanded.*

DUGGAN and GALWAY, JJ., concurred.