Manchester Family Division
No. 2010-183

IN THE MATTER OF ANTHONY J. LAURA AND ERICKA P. SCOTT

Argued: November 17, 2010
Opinion Issued: December 22, 2010

*Michael A. Delaney*, attorney general (*Rebecca L. Woodard*, assistant attorney general, on the brief and orally), for the New Hampshire Division of Child Support Services.

*The Law Offices of James F. Laura, P.C.*, of Concord (*James F. Laura* on the brief and orally), for the respondent.

Ericka P. Scott, *pro se*, filed no brief.

DUGGAN, J. The respondent, Anthony J. Laura, appeals an order of the Manchester Family Division (*Tenney*, J.) denying his motion to reconsider its order regarding child support arrearages. We affirm.

The record supports the following facts. In December 2007, the trial court issued a Uniform Support Order that required Laura to pay child support to Ericka P. Scott in the amount of $57.00 per week. Shortly after the order took effect, Laura lost his job and entered into an agreement with Scott to reduce child support payments to $50.00 per month. The agreement was drafted in the form of a legal motion, signed and dated by Laura and Scott, but never filed with the court. Laura had made all support payments up until the agreement was signed and continued making reduced payments under the new agreement for a short period after the agreement was signed. Laura then failed to make payments for several months. As a result, Scott asked for assistance from the New Hampshire Division of Child Support Services (DCSS) in collecting her support. DCSS sent notice to Laura of arrearages owed based upon the Uniform Support Order amount of $57.00 per week, and instructed him to make all future payments to DCSS. The trial court then granted DCSS's request to assign the arrearages to DCSS. Laura moved to reconsider and requested a hearing, arguing that "[t]he parties freely and voluntarily entered into

the . . . Agreement modifying the amount of child support payable to [Scott] and that Agreement is binding and enforceable under the Laws of the State of New Hampshire."

After a hearing, the trial court ruled that "the private agreement between the parties does not modify a final Uniform Support Order even when the private agreement is agreed to in writing and signed by both parties." The court directed DCSS to calculate Laura's arrearages based upon $57.00 per week minus any credits for payments made. Due to Laura's financial situation, the court held the arrearage in abeyance until Laura could become fully employed, and ordered a further hearing on whether to modify child support. This appeal followed.

On appeal, Laura argues that the parties did not need to file the agreement that they signed nor did they need to "seek approval of the Court for it to be a legally binding agreement effectuating the intentions of the parties as set forth in the Agreement." Laura compares his situation to a situation in which two private parties agree to amend a contract for the sale of personal property. He argues that the trial court unsustainably exercised its discretion in finding that the agreement did not modify the Uniform Support Order.

"[We] will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law." *In the Matter of Scott & Pierce*, 160 N.H. 354, 358 (2010) (quotation omitted).

■■ "New Hampshire's child support guidelines are codified in RSA chapter 458-C, and establish a uniform system to determine the amount of child support awards." *In the Matter of Carr & Edmunds*, 156 N.H. 498, 501 (2007) (quotation omitted). "The purpose of RSA chapter 458-C is not only to ensure uniformity in determining the amount of child support, but also to ensure that both the custodial and non-custodial parents share in the support responsibility for their children, according to the relative percentage of each parent's income." *In the Matter of Barrett & Coyne*, 150 N.H. 520, 523-24 (2004). "To this end, through a complex scheme of definitions and formulae, the legislature provided guidelines from which the trial court determines a parent's total child support obligation." *Carr & Edmunds*, 156 N.H. at 501 (quotation, brackets, and ellipsis omitted); *see* RSA 458-C:2 (Supp. 2009); RSA 458-C:3 (Supp. 2009). "There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support." *Carr & Edmunds*, 156 N.H. at 501 (quotation omitted); RSA 458-C:4, II (Supp. 2009). The presumption may be overcome and the trial court may deviate from the guidelines when a party shows by a preponderance of the evidence that the application of the guidelines would be "unjust or inappropriate" because of "special circum-

stances." *In the Matter of Baker & Winkler*, 154 N.H. 186, 187 (2006) (quotation omitted); RSA 458-C:4, II; RSA 458-C:5, I, II (Supp. 2009). "These guidelines, however, must be applied in all child support cases, including orders modifying an existing support order." *Carr & Edmunds*, 156 N.H. at 501. The legislature has further determined that

> [w]hen arrangements for child support are delineated in an agreement between the parties, and not made according to guidelines provided under this chapter, the presiding officer shall determine whether application of the guidelines would be inappropriate or unjust in such particular case, . . . and in certifying the agreement shall enter a written finding or a specific finding on the record that the application of the guidelines would be inappropriate or unjust and state the facts supporting such finding.

RSA 458-C:4, IV (Supp. 2009).

■ In this case, the parties made arrangements for child support in an agreement between themselves and not in accordance with the child support guidelines. While Laura argues that his change in financial situation was sufficient to warrant the modification of the child support agreement, the statute explicitly requires judicial approval of any agreement that departs from the child support guidelines. RSA 458-C:4, IV. In order to justify a departure from the guidelines, Laura must show by a preponderance of the evidence that a special circumstance exists which would make application of the guidelines "inappropriate or unjust." RSA 458-C:4, IV, :5. In order to certify an agreement not made in accordance with the guidelines, the court must then "enter a written finding or a specific finding on the record that the application of the guidelines would be inappropriate or unjust and state the facts supporting such finding." RSA 458-C:4, IV.

■ Here, neither party submitted the agreement to the trial court for a determination as to whether application of the guidelines would be inappropriate or unjust. As a result, Laura has not overcome the presumption that the amount of the award which would result from the application of the guidelines provided under the statute is the correct amount of child support. *See* RSA 458-C:4, II.

■ Aside from being contrary to the child support statutes, numerous policy considerations weigh in favor of requiring judicial approval for private child support agreements. As an initial matter, the child support award is a standing order from the trial court. Parties may not modify orders of the court through private agreement. *See In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) ("[U]nlike a private contract, an

agreement whose every provision has been approved and therefore activated by court order requires court approval before it may be modified." (quotation omitted)); *Brock v. Cavanaugh*, 468 A.2d 1242, 1244 (Conn. App. Ct. 1984) ("[A] support order can only be modified by the court."); *Culhane v. Culhane*, 119 N.H. 389, 394 (1979) ("orders for child support are modifiable by a court").

■ Additionally, RSA 458-C:5 requires the trial court to consider any special circumstances raised by the parties "in light of the best interests of the child" when deciding whether or not to depart from the support guidelines. "The court is vested with the ultimate responsibility for determining and safeguarding the best interests of children." *Lownds v. Lownds*, 551 A.2d 775, 779 (Conn. Super. Ct. 1988). "[P]arents may not bargain away the rights of their children to support." *Culhane*, 119 N.H. at 394; *cf. Carr & Edmunds*, 156 N.H. at 503 ("Regardless of the parents' actions, the children should not be deprived of the amount of support to which they are entitled."). "It is the duty of the court to enter such [support orders] as it believes to be in the best interests of the children, and it is a responsibility that cannot be delegated or abrogated by agreement of the parties." *Lownds*, 551 A.2d at 779.

■ Finally, judicial approval of all child support agreements is necessary to prevent collusion between the parties and situations in which one party puts undue pressure on the other. *Cf. Lownds*, 551 A.2d at 777-78 (father informed mother that he could only pay $300 per month instead of $1,500 as required by the support order, and if the plaintiff did not agree to the modification he would pay nothing and flee the state).

Accordingly, we cannot say that the trial court unsustainably exercised its discretion by ruling that the private agreement between the parties had no effect on the arrearages due under the support order.

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.