**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0112, <u>In the Matter of Allison Scamman and Bruce Scamman</u>, the court on November 20, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm in part, vacate in part, and remand.

The petitioner, Allison Scamman (wife), appeals, and the respondent, Bruce Scamman (husband), cross-appeals, final orders issued by the Circuit Court (<u>Patten</u>, J.) in their divorce.  The wife challenges the trial court's award of child support to her, arguing that the trial court erred by deviating downward from the child support guidelines amount without sufficient findings of fact, and by allocating the support on a per child basis.  She further challenges the award of alimony to her, arguing that it is insufficient to meet her reasonable needs, and that in awarding alimony, the trial court erred by finding that she has the ability to work.  Finally, the wife challenges the trial court's division of property, arguing that in allocating marital debt, the trial court erred by considering certain loans that the husband testified his parents had made, and that it failed to credit her with certain expenditures she had made in preparing the marital residence for sale.  The husband argues that the trial court erred by: (1) finding that the wife has a certain medical condition that is progressively worsening; (2) finding that he has disposable income and, thus, the ability to pay alimony; and (3) finding that he owes $408 in past child support.

We first address whether the trial court erred by deviating from the child support guidelines.  The child support guidelines, codified in RSA chapter 458-C, establish a uniform system to determine a parent's child support obligation.  <u>In the Matter of Laura & Scott</u>, 161 N.H. 333, 335 (2010).  Their purposes include not only establishing uniformity in determining child support obligations, but reducing the economic consequences of divorce on children by ensuring that parents share in their children's support according to the relative percentages of their incomes.  <u>Id</u>.; RSA 458-C:1 (Supp. 2014).  The amount of child support calculated pursuant to the guidelines is presumptively correct.  <u>Laura & Scott</u>, 161 N.H. at 335; RSA 458-C:4, II (Supp. 2014).  This presumption is rebuttable, however, and may be overcome by a preponderance of evidence that applying the guidelines would be unjust or inappropriate due to special circumstances.  <u>Laura & Scott</u>, 161 N.H. at 335-36; RSA 458-C:4, II; RSA 458-C:5, I, II (Supp. 2014).

To deviate from the child support guidelines, the trial court is required to issue written findings showing why a special circumstance justifies an adjustment in order to avoid an unjust or inappropriate result; it is not enough for the trial court merely to list special circumstances. See In the Matter of Forcier & Mueller, 152 N.H. 463, 465-66 (2005); In the Matter of Gordon and Gordon, 147 N.H. 693, 699-700 (2002); Giles v. Giles, 136 N.H. 540, 545 (1992). We will not overturn the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. Laura & Scott, 161 N.H. at 335.

In this case, the trial court found that pursuant to the child support guidelines, the husband is obligated to pay $1,543 per month. The trial court based its calculation upon the husband's monthly gross income of $7,881, and the wife's monthly gross income, consisting entirely of Social Security disability benefits, of $2,256. The trial court further found that the parties' two children receive a monthly Social Security derivative benefit of $1,128 as a result of the mother's disability. It did not, however, factor the derivative benefit in calculating the husband's obligation under the guidelines.

In addressing the husband's request that the trial court deviate from the child support guidelines, the trial court addressed his arguments that the following circumstances justified a deviation: (1) the parties had a shared parenting arrangement; (2) the husband had been the sole source of funding $2,300 for the children's extracurricular activities between 2009 and May 2014; and (3) the wife receives the children's Social Security derivative benefit. In addressing these arguments, the trial court observed that: (1) there was no agreement concerning the allocation of expenses for extracurricular activities, see RSA 458-C:5, I(h)(2)(A) (trial court may consider whether parents have agreed to apportion extracurricular expenses in deciding whether to deviate from the guidelines based upon shared parenting); (2) there was no evidence that the shared parenting arrangement resulted in a reduction of the wife's fixed costs, see RSA 458-C:5, I(h)(2)(B) (trial court may consider whether a shared parenting schedule reduces the obligee parent's fixed costs in deciding whether to deviate from the guidelines based upon shared parenting); and (3) neither party offered testimony or other evidence focused on the children's reasonable expenses, see RSA 458-C:5, I(b)(1) (trial court may consider whether guidelines amount substantially exceeds children's reasonable needs in deciding whether to deviate from guidelines based upon obligor's significantly higher income). Thus, the trial court found that the evidence did not support a deviation based upon shared parenting or an income disparity resulting in a support order that substantially exceeded the children's reasonable needs.

Nevertheless, the trial court concluded that "all of these factors [taken] together, plus the fact that alimony is being awarded to [the wife] to help with her fixed costs of living . . . constitute sufficient factors for a downward deviation" from the guideline amount. Thus, the trial court ordered the

husband to pay child support of $190 per week. It further ordered that he pay alimony of $125 per week for eighteen months, and $62.50 per week for an additional eighteen months, and provided that "[a]s the alimony award declines, . . . and when the alimony award ends after 3 years, the amount of alimony no longer to be paid . . . will become payable as additional child support, automatically, without further hearing or order." In its uniform support order, the trial court identified the following special circumstances as justifying the deviation: (1) "Father's substantial parenting time which is co-equal with mother's time"; (2) "Payment of extra-curricular activities"; and (3) "Each child receives $564.34 per month from Social Security."

We agree with the wife that, based upon the trial court's findings in its narrative order, deviating from the child support guidelines was erroneous as a matter of law. First, the trial court relied upon the award of alimony as a special circumstance. "Just as alimony should not be awarded under the guise of child support, child support should not be awarded under the guise of alimony." In the Matter of Watterworth & Watterworth, 149 N.H. 442, 446 (2003) (quotation and brackets omitted). In Watterworth, the trial court deviated from the guidelines by ordering the husband to pay an amount of alimony that otherwise would have been child support. See id. We observed that alimony and child support "serve different public policies, are governed by different statutes, are awarded based upon different factors, and are terminated for different reasons." Id. Because the trial court had allocated child support to the alimony award, we vacated both awards. Id. at 446-47.

Here, by relying upon the award of alimony to deviate from the child support guidelines, and by automatically increasing child support by the same amount as the alimony obligation is reduced or terminated, the trial court erroneously allocated child support to alimony. Indeed, the husband asserts in his brief that "[t]he criteria for an award and amount of child support and the rationale for deviation from the Child Support Guidelines [are] different from the criteria for an award of alimony and the rationale for its award," and that "[t]here is no legal basis for an award of alimony to automatically become an award of child support at the conclusion of alimony."

The remaining circumstances cited by the trial court in the uniform support order likewise do not justify a downward deviation in light of the express findings in the narrative order. Far from establishing why the shared parenting time, the husband's payment of extracurricular expenses, and the children's disability benefit justified an adjustment from the guidelines amount to avoid an unjust or inappropriate result, Forcier & Mueller, 152 N.H. at 465, the trial court's findings establish that: (1) the evidence does not support a finding "one way or another" to deviate based upon shared parenting; (2) the parties had no agreement to apportion extracurricular activity expenses; and (3) there was no basis to find that the children's receipt of disability would result in a support order substantially exceeding their reasonable needs.

3

We also note that we have treated Social Security dependency benefits in prior cases as part of the gross income of the parent from whom the benefit derived.  In the Matter of Angley-Cook & Cook, 151 N.H. 257, 258-59 (2004) (although paid directly to children, Social Security retirement dependency benefits derive from the contributing parent, and should be included in the gross income of the contributing parent); see also In the Matter of Lister & Lister, 162 N.H. 48, 50-51 (2011) (noting that the rationale of Angley-Cook & Cook is that Social Security dependency benefits are derived from the contributing parent); In the Matter of State and Taylor, 153 N.H. 700, 709-10 (2006) (applying Angley-Cook & Cook to Social Security disability income dependency benefits).  Although these cases concerned dependency benefits derived from an obligor parent who was then entitled to a credit for the benefits, we see no reason why the rationale should not apply equally to dependency benefits derived from an obligee parent's disability.  See Angley-Cook & Cook, 151 N.H. at 259 (noting that Social Security dependency benefits should be included in the income of either one parent or the other under RSA 458-C:2, IV (Supp. 2014)).  Nor are we aware of any authority establishing that the receipt of Social Security dependency benefits constitutes a special circumstance under RSA 458-C:5, rather than, or in addition to, a component of gross income under RSA 458-C:2, IV.  Here, although the children's dependency benefit may have been includable in the wife's gross income, there is no basis to deviate from the child support guidelines merely because the children receive the benefit.

Because the trial court erroneously allocated child support to alimony, and because it made insufficient findings to support a deviation from the child support guidelines, we vacate both the child support and alimony awards.  See Forcier & Mueller, 152 N.H. at 465-66; Watterworth & Watterworth, 149 N.H. at 446-47.  We likewise vacate the property award because the trial court, in dividing the marital property, factored in the alimony award, which we are vacating.  Because the parties have not challenged the final parenting plan, we affirm that portion of the trial court's final decree.

Although we are vacating the property, child support, and alimony awards, in the interest of judicial economy, we briefly address the parties' factual challenges to several of the trial court's findings and rulings.  We uphold the trial court's findings and rulings unless they lack evidentiary support or are tainted by error of law.  In the Matter of Aube & Aube, 158 N.H. 459, 461 (2009).  We defer to the trial court on matters of witness credibility and the weight to be assigned to the evidence presented, mindful that the trial court may accept or reject, in whole or in part, the testimony of any witness, and is not required to believe even uncontested evidence.  Id. at 465-66.

We conclude that the record contains sufficient evidentiary support for reasonable findings that: (1) the wife has a medical condition that is progressively worsening; (2) the wife has the ability to work; (3) the husband is

obligated to repay the loans he obtained from his parents; and (4) the husband owes $408 in past child support. With respect to the trial court's finding that the husband has disposable monthly income of $1,251, we note that although the husband appeals this finding within the context of his challenge to the award of alimony, the trial court rendered it in analyzing his expenses "for child support calculation purposes." We agree with the husband, however, that to the extent the trial court relied upon that finding to conclude that he had the ability to pay alimony, it erred. In determining an obligor's ability to pay alimony, the trial court is required to consider those liabilities that the obligor is legally obligated to pay, such as federal income, Medicare, and Social Security taxes, and ongoing child support. See RSA 458:19, IV(b) (Supp. 2014) (in determining amount of alimony, trial court shall consider the liabilities of the parties); cf. In the Matter of Crowe & Crowe, 148 N.H. 218, 226 (2002) (upholding alimony in a case in which the trial court, "[a]fter subtracting the amount of deduction to which the [obligor] was entitled for federal income tax and F.I.C.A. withholding," ordered alimony and child support in an amount that was thirty percent of his net income). We express no opinion as to whether the husband otherwise would have the ability to pay alimony.

In light of this order, we need not address the parties' remaining arguments. We remand for further proceedings consistent with this order.

Affirmed in part; vacated in part; and remanded.

Dalianis, C.J., and Hicks, Conboy, and Lynn, JJ., concurred.

**Eileen Fox,
Clerk**

5