NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Nashua Family Division
Nos. 2016-0478
      2017-0063


IN THE MATTER OF VIVIAN SILVA AND ROBERT SILVA

Argued: October 26, 2017
Opinion Issued: June 8, 2018

Law Offices of Lydon & Richards, P.C., of Nashua (Edward W. Richards on the brief and orally), for the petitioner.


Welts, White & Fontaine, P.C., of Nashua (Israel F. Piedra on the brief and orally), for the respondent.

BASSETT, J. In these consolidated appeals, the petitioner, Vivian Silva, appeals two orders of the Circuit Court (Introcaso, J.) in her divorce from the respondent, Robert Silva. She argues that the trial court erred when it: (1) deviated from the child support guidelines, see RSA 458-C:5 (Supp. 2017); (2) inequitably divided the marital estate, see RSA 458:16-a, II (2004); and (3) did not find the respondent in contempt for withdrawing funds from an education savings account, or "529 account," established for their daughter's benefit, during the pendency of the divorce, and did not consider the 529 account in its division of the marital estate, see 26 U.S.C. § 529 (Supp. 2017); RSA 458:16-a, III (2004). We vacate and remand.

The record supports the following facts.  In July 2016, following a final divorce hearing, the trial court granted the parties a divorce based upon irreconcilable differences.  In the final divorce decree, the trial court ordered an equal division of the marital assets based upon a consideration of the factors outlined in RSA 458:16-a.  By agreement of the parties, the petitioner was awarded the parties' real estate, where the parties had resided and operated a bed and breakfast.  The trial court awarded other assets to the respondent to equalize the award.

The parties' final divorce decree also included an agreed-upon parenting plan regarding the parties' two children, which provided that the parties "shall have equal or approximately equal residential responsibility."  At the time the trial court entered the final divorce decree, it also entered a temporary Uniform Support Order regarding child support.  In that temporary order, it denied the respondent's request to deviate from the child support guidelines, and ordered him to pay full child support to the petitioner.

Subsequently, the trial court held a final child support hearing and issued a final order.  The court ordered a downward deviation from the child support guidelines, thereby reducing the respondent's child support obligation from $1,590.00 per month to $533.80 per month.  See RSA 458-C:5, I.  The trial court justified the adjusted support obligation on three grounds related to the parties' shared parenting schedule.  See RSA 458-C:5, I(h)(2).  The petitioner filed motions to reconsider the property distribution order and the final child support order, both of which were denied.  These appeals followed.

I.     Child Support

The petitioner first argues that the trial court erred when it deviated from the child support guidelines based upon the parties' shared parenting schedule.  We agree.

We will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law.  In the Matter of Laura & Scott, 161 N.H. 333, 335 (2010).  "When we determine whether a ruling made by a judge is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the discretionary judgment made."  State v. Lambert, 147 N.H. 295, 296 (2001).

New Hampshire's child support guidelines, codified in RSA chapter 458-C (2004 & Supp. 2017), establish a uniform system to determine the amount of child support awards.  Laura, 161 N.H. at 335.  The purpose of RSA chapter 458-C is not only to ensure uniformity in determining the amount of child support, but also to ensure that both the custodial and non-custodial parents share in the support responsibility for their children, according to the

relative percentage of each parent's income.  Id.  There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support.  Id.; RSA 458-C:4, II (2004).  This presumption may be overcome, and the trial court may deviate from the guidelines, when a party shows by a preponderance of the evidence that the application of the guidelines would be "unjust or inappropriate," RSA 458-C:4, II, because of "[s]pecial circumstances," RSA 458-C:5, I; Laura, 161 N.H. at 335-36.  If the trial court deviates from the guidelines, it must "make a written finding as to why a special circumstance pursuant to RSA 458-C:5 justifies an adjustment from the child support guidelines to avoid an unjust or inappropriate result."  In the Matter of Forcier & Mueller, 152 N.H. 463, 465 (2005); see RSA 458-C:4, II.

RSA 458-C:5, I, includes a non-exclusive list of special circumstances that, if raised by a party or the court, the court shall consider in making an adjustment that deviates from the child support guidelines.  RSA 458-C:5, I.  Although this list is non-exclusive, we have interpreted "special circumstances" as including only circumstances that are "economic in nature and relate to the impact of a parent's financial condition upon his or her ability to meet a child's needs."  In the Matter of Carr & Edmunds, 156 N.H. 498, 504 (2007).  Additionally, the trial court must consider any special circumstances "in light of the best interests of the child."  RSA 458-C:5, I.

RSA 458-C:5 expressly identifies the parties' parenting schedule as a special circumstance.  RSA 458-C:5, I(h).  However, the statute provides that "[e]qual or approximately equal parenting residential responsibilities in and of itself shall not eliminate the need for child support and shall not by itself constitute ground for an adjustment."  RSA 458-C:5, I(h)(1) (emphases added).  The statute further provides that, in considering requests for adjustments to the application of the child support guidelines based upon the parenting schedule, the court "may" consider three factors:

> (A) Whether, in cases of equal or approximately equal residential responsibility, the parties have agreed to the specific apportionment of variable expenses for the children, including but not limited to education, school supplies, day care, after school, vacation and summer care, extracurricular activities, clothing, health insurance costs and uninsured health costs, and other child-related expenses.

> (B) Whether the obligor parent has established that the equal or approximately equal residential responsibility will result in a reduction of any of the fixed costs of child rearing incurred by the obligee parent.

3

(C) Whether the income of the lower earning parent enables that parent to meet the costs of child rearing in a similar or approximately equal style to that of the other parent.

RSA 458-C:5, I(h)(2)(A)-(C).

The trial court justified the respondent's adjusted child support obligation on three grounds related to the factors enumerated in RSA 458-C:5, I(h)(2). The petitioner challenges all three grounds for the trial court's decision. The petitioner first argues that the trial court erred because there was "no factual basis" for its adjustment under subparagraph I(h)(2)(A). The respondent counters that the trial court's deviation was sustainable because it apportioned "the majority of financial responsibility for several child-related expenses" to the respondent, and it specified written reasons justifying the deviation. We agree with the petitioner.

Here, the trial court justified its deviation from the guidelines not upon the parties' agreement to apportion variable expenses, but rather, upon its own apportionment of expenses. Cf. RSA 458-C:5, I(h)(2)(A). Neither party asserts that the trial court erred when it considered its own apportionment of expenses — as opposed to an apportionment of expenses agreed to by the parties — as a special circumstance under RSA 458-C:5, I(h)(2). Accordingly, for the purposes of this appeal, we assume that a court-ordered apportionment of expenses is a special circumstance that may be considered pursuant to RSA 458-C:5, I(h)(2). Nonetheless, we conclude that the trial court's findings were insufficient to justify a deviation.

The court found that, during his parenting time the respondent assumed the cost of child care, sustenance, transportation, clothing, and other variable expenses. In addition to these costs assumed by the respondent, the court apportioned to him two-thirds of the cost of school supplies and seventy-five percent of the cost of health insurance deductibles and co-pays. It also required him to pay seventy-five percent of the cost of any extracurricular activities and summer programs for the children, subject to the condition that both parties agree to the activity or program. The trial court further provided that each party is responsible for all child care costs and vacation costs incurred during their respective parenting times.

The trial court did not analyze the economic consequences of its apportionment of variable expenses or the respondent's assumption of responsibility for other variable expenses, or explain how the division of expenses made the application of the guidelines "unjust or inappropriate." RSA 458-C:4, II; see Forcier, 152 N.H. at 465 (holding that "the trial court's simple statement that the 'remainder of child support obligation will continue to go to the college trust fund for the children' was not legally sufficient to explain what 'economic consequences' result[ed] from this payment and why it

[was] consequently appropriate and just" to enter a downward deviation).  The trial court's recognition that responsibility for certain variable expenses had been apportioned to, or assumed by, the respondent, without findings as to why this apportionment made adherence to the guidelines unjust or inappropriate, is insufficient, as a matter of law, to justify a deviation from the guidelines.  See Forcier, 152 N.H. at 465-66; In the Matter of Gordon and Gordon, 147 N.H. 693, 699-700 (2002).

The petitioner also argues that the trial court erred when it made a downward deviation because there was no "proof of [a] reduction in [her] fixed costs of child rearing."  See RSA 458-C:5, I(h)(2)(B).  The respondent counters that the trial court's deviation from the guidelines under subparagraph I(h)(2)(B) was a sustainable exercise of discretion because the court gave written reasons for the deviation, including that the respondent has assumed full responsibility for child care, transportation, and other costs incurred during his parenting time.  We agree with the petitioner.

In its final order, the trial court found that the parties' shared parenting schedule "has resulted in a reduction of the fixed costs of child rearing incurred by the [petitioner] in that the [respondent] takes full responsibility for child care, sustenance, transportation and all other costs for the children during his parenting time."  See RSA 458-C:5, I(h)(2)(B).  It further noted that "[b]oth parents provide living arrangements, clothing and other items for the children."  However, the trial court did not find that any of the petitioner's fixed costs were reduced because of the parties' shared residential responsibility.  Indeed, with the exception of housing, the expenses that the trial court discussed are either explicitly referred to in the statute as "variable expenses," or are akin to the enumerated variable expenses.  See RSA 458-C:5, I(h)(2)(A) (referring to "variable expenses for the children" as "including but not limited to education, school supplies, day care, after school, vacation and summer care, extracurricular activities, clothing, health insurance costs and uninsured health costs, and other child-related expenses" (emphases added)); see also Webster's Third New International Dictionary 2533 (unabridged ed. 2002) (defining "variable cost" as a "cost that fluctuates directly with changes in output").  The statute does not define "fixed costs" as used in RSA 458-C:5, I(h)(2)(B).  See RSA 458-C:2 (Supp. 2017) (defining terms used in RSA chapter 458-C).  Accordingly, principles of statutory interpretation dictate that the term mean something different than the term "variable expenses" as used in the same statute.  See Ettinger v. Town of Madison Planning Bd., 162 N.H. 785, 791 (2011) ("When the legislature uses different language in the same statute, we assume that the legislature intended something different."); see also Black's Law Dictionary 422-23 (10th ed. 2014) (defining "fixed cost" as "[a] cost whose value does not fluctuate with changes in output or business activity; esp[ecially] overhead expenses such as rent . . . .").

The trial court did not explain how the parties' division of responsibility for certain <u>variable</u> expenses resulted in a reduction of the petitioner's <u>fixed</u> costs. Although the trial court noted that each party provides housing for the children, which is arguably a fixed cost, it did not explain how the parties' shared residential responsibility reduced the cost of the petitioner's housing or reduced her other fixed costs. Accordingly, we conclude that the trial court did not make sufficient findings to support its conclusion that the petitioner's fixed costs were reduced by the parties' shared residential responsibility. See RSA 458-C:5, I(h)(2)(B).

The petitioner next argues that the trial court did not give proper consideration to RSA 458-C:5, I(h)(2)(C) and "ignored its responsibility to only deviate from the guidelines when the obligee can maintain a home and lifestyle environment for the children during her parenting periods comparable to [the] obligor." The respondent counters that the trial court's deviation from the guidelines was a sustainable exercise of discretion because it justified the deviation in writing, explaining that the petitioner had been awarded the marital home. Again, we agree with the petitioner.

The trial court stated that it was "confident" that the petitioner's income, including self-employment wages, alimony, and rental income, "enables her to meet the costs of child rearing in a similar or approximately equal style to that" of the respondent. See RSA 458-C:5, I(h)(2)(C). In support of this statement, the court observed that, as a result of her business, the petitioner "has the privilege of a generous and comfortable living environment for the children . . . in an upscale, safe community" and that "[h]er home combined with her other financial resources assure that the children will reside in a style similar to that affordable to" the respondent.

We conclude that the trial court made insufficient findings to support its conclusion. The record demonstrates that the petitioner's adjusted gross monthly income plus child support, is $2,872, which is significantly less than the respondent's adjusted gross monthly income minus his support obligation, which is $6,913. Despite this disparity, the trial court reasoned that the petitioner's financial resources and home ownership ensure that the children will reside with her in a style similar to that of the respondent. We realize that the petitioner, and by extension, the children, benefit from the petitioner's home and business property because they provide a safe and comfortable living environment. However, the record demonstrates that the petitioner's adjusted gross monthly income, plus child support, is insufficient to enable her to continue to meet the costs of child rearing in a style that is approximately equal to that of the respondent. See RSA 458-C:5, I(h)(2)(C).

The petitioner's adjusted gross monthly income plus the reduced child support payment ordered by the court — $2,872 — falls well short of her estimated monthly expenses — $4,370. The respondent did not challenge

these estimated monthly expenses at the final hearing. The gap between the petitioner's income and her expenses demonstrates that she will not be able to afford the costs associated with home and business ownership, including mortgage payments, property taxes, utilities, and insurance, in addition to covering other child rearing expenses, such as food, clothing, and school supplies. Therefore, we conclude that the trial court made insufficient findings to justify a deviation under subparagraph I(h)(2)(C).

We now turn to the respondent's additional arguments in support of the trial court's deviation. The respondent argues, relying upon In the Matter of Lynn & Lynn, 158 N.H. 615, 618 (2009), that "[i]t was within the court's discretion to consider the [petitioner's] voluntary underemployment as a special circumstance justifying a downward deviation from the guidelines." However, neither the trial court in Lynn, see id., nor the trial court in this case, based its downward deviation from the guidelines upon a finding of voluntary underemployment. We therefore find the respondent's reliance upon Lynn to be misplaced.

The respondent also argues that we must presume that the trial court made sufficient findings regarding the statutory factors to support its deviation. We disagree. The child support statute requires that, in order to justify a deviation from the guidelines, the trial court make a "specific finding . . . on the record." RSA 458-C:4, II. Although the factors enumerated in RSA 458-C:5, I(h)(2) are neither mandatory nor exclusive, and despite the fact that the trial court referenced the factors in its order, we conclude that, as to all three grounds for the deviation, the court's findings were insufficient because it did not explain why a departure from the guidelines was necessary to avoid an unjust or inappropriate result. See RSA 458-C:4, II; see also Forcier, 152 N.H. at 465-66 (vacating trial court's order deviating from guidelines because it did not make a finding "to show why a departure from the guidelines [was] necessary . . . to avoid an unjust or inappropriate result"). Accordingly, we vacate the trial court's child support determination.

II.     Property Division

We next address the parties' arguments regarding the division of the marital estate. The trial court is afforded broad discretion in determining matters of property distribution when fashioning a final divorce decree. In the Matter of Geraghty & Geraghty, 169 N.H. 404, 417 (2016). We will not overturn a trial court's decision on these matters absent an unsustainable exercise of discretion or an error of law. Id. If the court's findings can reasonably be made on the evidence presented, they will stand. In the Matter of Martel & Martel, 157 N.H. 53, 56 (2008).

7

A. Valuation of real estate

At the final divorce hearing, the parties agreed that real estate in the marital estate would be awarded to the petitioner, that the value of the property was $550,000, and that a mortgage of approximately $309,000 was secured by the marital property. The parties also stipulated that the petitioner's parents gave the parties funds that were "an investment in the property that added to the property's value." However, they disagreed as to the legal implication of the parents' investment. In its final order, the trial court determined that, because the parties did not have a legal obligation to repay the parents, it would not regard the parents' investment as a debt chargeable to the marital estate.

The petitioner argues that, because the trial court mischaracterized the parents' financial contributions as giving rise to only a moral obligation for repayment, it erroneously overvalued the equity in the property. She argues that, had the trial court properly deemed the parents' contributions to be an encumbrance, the value of the property awarded to the petitioner would have been reduced, which, in turn, would have reduced the amount of property awarded to the respondent. The petitioner makes numerous arguments as to how the trial court erred; however, all of her arguments are premised upon the notion that the trial court erred because it concluded that the parties did not have a legal obligation to repay the parents. We conclude that the trial court did not err in rejecting this premise.

We have recognized that a "moral" obligation for repayment — as opposed to a legal obligation — cannot properly be characterized as a debt chargeable to the marital estate. In the Matter of Harvey & Harvey, 153 N.H. 425, 437 (2006), overruled on other grounds by In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 16 (2007); see also Azzi v. Azzi, 118 N.H. 653, 656-57 (1978) (upholding trial court's exclusion of purported debt from marital estate where there was evidence upon which trial court could conclude that repayment of debt would represent satisfaction of a moral, not legal, obligation). Here, the trial court did not consider the purported debt in its division of the marital estate because it concluded that the parents' financial contributions "were not 'loans' which would constitute a debt chargeable to the marital estate as neither party ha[d] 'an enforceable legal obligation' to repay the [parents]." The trial court reached its conclusion after making the following factual findings: "[t]here was no documentation of these [alleged] loans indicating the identity of the borrower(s), the terms of the loan, the purpose of the loan, etc."; "there was no specific documentation provided indicating that the banking institution which provided a mortgage on the parties['] property [was] informed of a 'loan' by a third party"; neither party "document[ed] the existence of this alleged 'loan' in their initial financial affidavits"; and "there [was] no evidence of repayment of these loans; rather the [parents] have taken occupancy of the property." Because these findings are supported by the

record, we cannot conclude that the trial court unsustainably exercised its discretion.  See Harvey, 153 N.H. at 437; Azzi, 118 N.H. at 656-57.

### B.     Equal distribution of marital estate

The petitioner also argues that the trial court erred when it made an equal distribution of the marital estate.  Specifically, she contends that the distribution was not equitable because: (1) the respondent's earnings and employer-provided benefits "have always been and will likely continue to be twice what [the petitioner's] are or will be"; (2) her earnings are insufficient to cover her living expenses or to allow her to acquire capital assets in the future; (3) the petitioner's "career was interrupted and then terminated due to child care demands and the parties' decision to start a bed and breakfast home business"; and (4) at the time of the divorce, the respondent had significantly more in retirement savings.  See RSA 458:16-a, II(b)-(c), (g), (i).  The respondent counters that the petitioner's argument is waived because it was not included in the petitioner's notice of appeal.  On the merits, the respondent argues that the trial court sustainably exercised its discretion when it equally divided the marital property because the trial court considered each of the RSA 458:16-a, II factors, and, under the statute, an equal distribution is presumptively equitable.

Assuming, without deciding, that the petitioner's argument is not waived, we agree with the respondent that the trial court sustainably exercised its discretion.  Under RSA 458:16-a, II, "an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more of the factors designated in the statute."  Geraghty, 169 N.H. at 417 (quotation omitted).  The statute lists factors that the court may consider, see RSA 458:16-a, II, and also permits the court to consider any other factor it deems relevant, see RSA 458:16-a, II(o); see also In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006).  The court need not consider all of the enumerated factors or give them equal weight.  See Geraghty, 169 N.H. at 417.

In its order, the trial court stated that it "look[ed] at each of the factors to be considered under RSA 458:16-a" and found "no articulable reason to order anything other than an equal division of assets to the extent . . . possible."  The record supports this determination.  Further, in its order, the trial court specifically discussed the length of the marriage; the parties' respective contributions to the growth of common assets, including their real estate and business; the parties' education, health, and ability to support themselves; and their abilities to secure additional assets in the future.  See RSA 458:16-a, II (a)-(c), (f); see also RSA 458:16-a, IV (2004) (requiring the court to "specify written reasons for the division of property which it orders").  We cannot say that the trial court unsustainably exercised its discretion.  See Geraghty, 169 N.H. at 417-18; In the Matter of Watterworth & Watterworth, 149 N.H. 442, 453 (2003).

C.     Evidentiary rulings

The petitioner next argues that the trial court erred when it prohibited introduction of certain evidence related to the parents' contribution to the parties' real estate.  The petitioner merely asserts that the court erred when it "refused to allow" her to introduce certain evidence, but she does not develop an argument as to why those rulings were in error or point to any authority in support of her position.  Because we confine our review to only those issues that the petitioner has fully briefed, we deem these arguments waived.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

III.    529 Account

Finally, we address the parties' arguments regarding the 529 account that was established for the parties' daughter's benefit and held in the respondent's name.  Prior to the final divorce hearing, the petitioner filed a motion for contempt, claiming that, by withdrawing funds from the 529 account, the respondent had violated a court order.  Cf. RSA 458:16, I(g) (2004) (providing that, after the filing of a divorce, trial court may, within its discretion, issue a temporary restraining order "[e]njoining any party from transferring, encumbering, hypothecating, concealing or in any way disposing of any property, real or personal, except in the usual course of business or for the necessities of life").  After the final divorce hearing, at which the respondent testified about his withdrawal of funds, the trial court found that, because "he was unable to meet his ongoing financial expenses," the respondent had removed one half of the funds from the 529 account during the pendency of the divorce.  Although the court ruled that the respondent was "responsible for any tax, fees or penalties associated with the withdrawals he made from the account," it did not award the balance of the 529 account to the petitioner.  There is no evidence in the record that the court found the respondent in contempt.

The petitioner argues that the trial court erred by "fail[ing] to take any action on [her] motion," and by failing to find him in contempt.  The respondent counters that we should reject the petitioner's argument because she has not provided us a sufficient record to decide the issue.  We agree with the respondent.

"It is the burden of the appealing party, here the [petitioner], to provide this court with a record sufficient to decide her issues on appeal . . . ."  Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004); see also Sup. Ct. R. 13(2). The petitioner has not provided us with a copy of her motion for contempt, or a copy of the trial court's order that she claims the respondent violated by withdrawing funds from the account.  Nor does the record on appeal include a copy of the trial court's order on the petitioner's motion for contempt. Although the petitioner argues, in part, that the trial court failed to rule upon

10

her motion, the trial court referenced a previous order on the contempt motion when ruling upon the parties' requests for findings of fact and rulings of law, and we have not been provided with a copy of the order itself.  Absent a complete record, we cannot conclude that the trial court committed error.  See In the Matter of Rokowski & Rokowski, 168 N.H. 57, 62 (2015) (concluding that, because the respondent failed to provide a sufficient record for our review, he had not demonstrated that the trial court erred).

The petitioner also argues that the trial court erred in that it either did not consider the 529 account when making its property distribution, or if it did, its property distribution did not comply with RSA 458:16-a, III.  RSA 458:16-a, III provides that if either or both parties retain an ownership interest in a 529 account, "the court may, in its discretion, preserve the account for its original purpose or may treat the account as property of the marriage subject to equitable division."  RSA 458:16-a, III.  The petitioner argues that the trial court erred when it did not treat all of the account funds in the same manner — either as a marital asset subject to equitable distribution, or as preserved for its original purpose.  In other words, the petitioner asserts that it was error for the trial court to allow the respondent to retain the withdrawn funds, while also requiring that the remainder of the funds be preserved for their original purpose in the account.

Given the record before us, it is unclear whether the trial court considered the 529 account funds in its property distribution, and if it did, how it disposed of the balance of those funds.  In the absence of a clear finding by the trial court as to these matters, we decline to address the parties' arguments on this issue.  See Carr, 156 N.H. at 506 (remanding to trial court for further clarification or consideration where it was unclear whether trial court had ruled upon party's request for dental insurance coverage and payment of certain expenses).  Accordingly, we vacate the property distribution in its entirety and remand to the trial court to clarify its disposition of the 529 account and, as necessary, to adjust the division of marital property.

Vacated and remanded.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.

11