NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

3rd Circuit Court-Ossipee Family Division
No. 2021-0302

IN THE MATTER OF PHILIP BORELLI AND CATHERINE BORELLI

Submitted: May 4, 2022
Opinion Issued: July 6, 2022

Diana G. Bolander, of Wolfeboro, on the brief, for the petitioner.

Catherine Borelli, self-represented party, on the brief.

HICKS, J. The petitioner, Philip Borelli (Husband), appeals an order of the Circuit Court (Countway, J.) determining that he owes the respondent, Catherine Borelli (Wife), a child support arrearage, which the court ruled that it lacked authority to modify retroactively. We affirm.

The following facts either were found by the trial court or reflect the content of documents in the appellate record. The parties divorced in May 2014. Their uniform support order (USO) required Husband to pay Wife $2,400 in monthly child support for the parties' four children, whose ages ranged from nine years old to fifteen years old as of May 2014. The USO incorporated numerous standing orders. The standing orders relevant to the instant appeal are as follows:

SO-3C:  . . . Any party may petition the Court at any time for a modification of this support order if there is a substantial change in circumstances.  **The effective date of any modification shall be no earlier than the date of notice to the other party**. . . . **See RSA 458-C:7.**

. . . .

SO-3D:  No modification of a support order shall alter any arrearages due prior to the date of filing the pleading for modification.  RSA 461-A:14, VIII.

SO-4A:  The amount of a child support obligation shall remain as stated in the order until the dependent child for whom support is ordered completes his or her high school education or reaches the age of 18 years, whichever is later, or marries, or becomes a member of the armed services, at which time the child support obligation . . . terminates without further legal action . . . .

SO-4B:  In multiple child orders, the amount of child support may be recalculated according to the guidelines whenever there is a change in the number of children for whom support is ordered, upon petition of any party. . . . The obligor remains obligated for any and all arrearages of the support obligation that may exist at the time of emancipation.

SO-4C:  If the order establishes a support obligation for more than one child, and if the court can determine that within the next 3 years support will terminate for one of the children, the amount of the new child support obligation for the remaining children may be stated in the order and shall take effect on the date or event specified without further legal action.

The USO did not specify the amount of Husband's new child support obligation for the remaining children when the parties' eldest, their fifteen-year-old, became ineligible for child support.  Nonetheless, as each child "aged out" of child support, Husband reduced the amount of child support that he paid by $600 (one-fourth of $2,400).  The parties dispute whether Husband did so with Wife's concurrence.  To the extent that Wife did not agree to the reduced support, she did not seek court intervention on the issue.  To the extent that she did agree to it, neither she nor Husband reduced the agreement to writing or submitted it to the court for approval.

In January 2020, Husband filed a petition to modify child support.  At that time, he was obligated to provide child support for only the two youngest children.  Husband averred in his petition that he sought to modify child

support because the youngest children "are with [him] for the school year[,] which is dramatically more parenting time" than had been allotted him under the parenting plan issued with the parties' divorce decree.

Following a hearing on offers of proof, the trial court assumed that the parties had agreed to modify child support, but ruled that their alleged agreement was without effect. Because the parties' alleged agreement was never filed with and approved by the court, "child support continued to be due and owing in the amount of $2400 until the current petition was served on [Wife]" in February 2020. The court ruled that, pursuant to the pertinent statutes as interpreted in In the Matter of White & White, 170 N.H. 619 (2018), it lacked the authority to alter the arrearage retroactively, and, therefore, Husband owed "an arrearage as of February 2020 of $50,420." Husband unsuccessfully moved for reconsideration, and this appeal followed.

Trial courts have broad discretion in reviewing and modifying child support orders. In the Matter of Ndyaija & Ndyaija, 173 N.H. 127, 140 (2020). We will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. Id. Under our unsustainable exercise of discretion standard of review, we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. See In the Matter of Summers & Summers, 172 N.H. 474, 478-79 (2019). The trial court's factual findings are binding upon us if they are supported by the evidence and are not legally erroneous. Id. at 479. However, to the extent that resolving a modification issue requires that we interpret pertinent statutes, we review the trial court's statutory interpretation de novo. Id. We review the trial court's legal rulings and its application of law to the facts de novo as well. Balzotti Global Grp., LLC v. Shepherds Hill Proponents, LLC, 173 N.H. 314, 319 (2020).

On appeal, Husband first argues that White & White is distinguishable from this case and that, in any event, it does not apply because part of his child support arrearage was accrued before it was decided. We conclude that the trial court correctly applied White & White to this case.

The parties in White & White divorced in 2003 when their two children were minors. White & White, 170 N.H. at 620. At that time, the father was required to pay $1,314 in monthly child support; the trial court modified his support obligation in 2010. Id. In June 2014, the parties' older child graduated from high school, and, therefore no longer qualified for child support. Id. In 2016, the father sought to modify his child support obligation retroactive to June 2014. Id. The trial court retroactively modified the father's child support obligation to 2014, thereby reducing the total amount of his arrearage. Id. at 620, 625. We reversed. Id. at 625.

The mother argued that, by retroactively modifying the father's child support obligation, the trial court altered a previously-accrued child support arrearage, contrary to RSA 461-A:14, VIII and RSA 458-C:7, II. See id. at 621; RSA 461-A:14, VIII (2018); RSA 458-C:7, II (2018). The father argued that neither RSA 461-A:14, VIII nor RSA 458-C:7, II applied because the trial court did not modify his child support obligation. White & White, 170 N.H. at 621. Rather, "he maintain[ed] that, pursuant to RSA 461-A:14, IV, when the parties' older child became emancipated in July 2014, his support obligation for that child terminated without further legal action and, therefore, the court merely recalculated the amount of arrearages based upon the date of termination." Id.; see RSA 461-A:14, IV (2018) (amended 2019).

We noted that RSA 461-A:14, IV provides that the amount

"of a child support obligation shall remain as stated in the order until the dependent child for whom support is ordered completes his or her high school education or reaches the age of 18 years, whichever is later . . . at which time the child support obligation . . . terminates without further legal action."

White & White, 170 N.H. at 621 (quoting RSA 461-A:14, IV). And, we observed that RSA 461-A:14, IV-a provides:

"If the order establishes a support obligation for more than one child, and if the court can determine that within the next 3 years support will terminate for one of the children as provided in paragraph IV, the amount of the new child support obligation for the remaining children may be stated in the order and shall take effect on the date or event specified without further legal action. Termination of support for any one of the children under paragraph IV is a substantial change of circumstances for purposes of modification of the child support order under RSA 458-C:7."

Id. at 622 (quoting RSA 461-A:14, IV-a); see RSA 461-A:14, IV-a (2018).

Reading these provisions together, we concluded "that when an order establishes a support obligation for one child, RSA 461-A:14, IV allows for the termination of that support obligation under the enumerated circumstances 'without further legal action.'" White & White, 170 N.H. at 622 (quoting RSA 461-A:14, IV). However, "when an order establishes a support obligation for more than one child, but does not specify the amount of a new child support obligation for the remaining unemancipated children . . . , a parent must apply to the court for modification of such order." Id. We observed that "the support obligation is not based solely upon the number of children, but based upon an application of the child support guidelines and any special circumstances

4

raised by the parties or by the court." Id. at 623. Thus, we reasoned, "when an order establishes a child support obligation for more than one child, it makes sense to require the court to specify the new support obligation amount for the remaining children," either in the original support order as set forth in RSA 461-A:14, IV-a, or in a new support order upon a motion for modification of child support under RSA 458-C:7. Id.

Because the parties' USO did not specify a new child support obligation when the parties' older child became ineligible for child support, "the amount of the Father's support obligation did not change . . . upon the older child's emancipation. Rather, the Father was required to apply to the court for modification" of the USO. Id. (citation omitted). We further explained that because, under RSA 461-A:14, VIII, "'[n]o modification of a support order shall alter any arrearages due prior to the date of filing the motion for modification,'" the trial court lacked discretion to modify the father's child support obligation retroactively to 2014 and, thereby, to alter the arrearages that he owed. Id. (quoting RSA 461-A:14, VIII).

The principles that we articulated in White & White are dispositive here. Like the trial court in White & White, the trial court in this case lacked discretion to modify Husband's child support obligation retroactively and, thereby, to alter the arrearages that he owed. Id. The USO in this case, like the USO in White & White, established a support obligation for more than one child. Id. The USO in this case, like the USO in White & White, failed to specify a new child support obligation when the parties' eldest child became ineligible for support. Id. Under these circumstances, as the trial court correctly ruled, Husband was required to pay $2,400 in monthly child support until February 2020, when his petition to modify his support obligation was served on Wife. See id.

We are unpersuaded by Husband's attempts to distinguish this case from White & White. Husband argues that the cases are distinguishable in part, because his request to modify his child support obligation was based upon a change in the parties' parenting schedule and there is no evidence that the requested modification in White & White was similarly based. However, this factual difference between the two cases is immaterial to the legal issues decided in White & White and their application to this case.

Husband also argues that this case is distinguishable from White & White because, here, the parties agreed to modify his child support obligation, and there was no such agreement in White & White. However, any such agreement was unenforceable because it was never approved by the court. See In the Matter of Laura & Scott, 161 N.H. 333, 336 (2010). RSA 458-C:4, IV provides:

5

When arrangements for child support are delineated in an agreement between the parties, and not made according to [the child support] guidelines . . . , the presiding officer shall determine whether the application of the guidelines would be inappropriate or unjust in such particular case, using the criteria set forth in RSA 458-C:5, and in certifying the agreement shall enter a written finding or a specific finding on the record that the application of the guidelines would be inappropriate or unjust and state the facts supporting such finding.

RSA 458-C:4, IV (2018). RSA 458-C:4, IV "explicitly requires judicial approval of any agreement that departs from the child support guidelines." Laura & Scott, 161 N.H. at 336. Moreover, a "child support award is a standing order from the trial court," and "[p]arties may not modify orders of the court through private agreement." Id.

We reject Husband's assertion that because his arrearage first accrued in 2016, before we decided White & White in 2018, White & White does not apply. Husband is mistaken for two reasons.

First, our settled rule is that "if we do not expressly decide or reserve the retroactivity question for a later date when we establish a new rule of law, then the new rule will be applied retroactively to all cases pending and to all events arising before or after the date of the decision." Lee James Enters. v. Town of Northumberland, 149 N.H. 728, 730 (2003). In White & White, we neither limited our holding to prospective application nor reserved the retroactivity question for a later date. Accordingly, our holding in that case applies "retroactively to all cases pending and to all events arising before or after" we decided it in 2018. Id.

Second, in White & White, we simply interpreted four statutory provisions, all of which were in effect in 2016 when Husband's arrearage first accrued. See RSA 461-A:14, IV, IV-a, VIII; RSA 458-C:7, II; White & White, 170 N.H. at 621-23. "Judicial construction of a statute becomes part of the legislation from the time of its enactment." In the Matter of Cole & Ford, 156 N.H. 609, 611 (2007). "By saying what the law is, the court says, in effect, what it should have always been." Id. (quotation omitted). Therefore, our ruling in White & White interpreting RSA 461-A:14, IV, IV-a, VIII, and RSA 458-C:7, II applies from the effective date of those versions of the statutes. See id. And, because they were all enacted before Husband's arrearage first accrued in 2016, our holding in White & White applies to this case. See id.

Husband next asserts that, nonetheless, the trial court had equitable authority to modify his arrearage retroactively. We disagree.

The circuit court is a court of limited jurisdiction, with exclusive jurisdiction conferred by statute in certain discrete areas, including petitions for divorce. See In the Matter of O'Neil & O'Neil, 159 N.H. 615, 622 (2010); RSA 490-D:2, I (2010); RSA 490-F:18 (Supp. 2021) (references in statutes to the judicial branch family division shall be deemed to be to the circuit court where it has exclusive subject matter jurisdiction). "Because the need to render equitable orders is inherent in the resolution of divorce matters, the legislature has afforded the [circuit court] the powers of a court in equity in exercising this jurisdiction." Estate of Mortner v. Thompson, 170 N.H. 625, 629 (2018) (quotation and citation omitted); see RSA 490-D:3 (2010). "[T]he overall scheme of the relevant divorce statutes governs issues of, among other things, . . . orders of support." In the Matter of Muller & Muller, 164 N.H. 512, 518 (2013).

Although the circuit court acts as a court of equity in divorce matters, it may only exercise its equitable authority consistently with its governing statutes. See id. at 517-18 (deciding that divorce court lacked jurisdiction to invalidate a mortgage interest belonging to a third party because, although the court sits as a court in equity in divorce matters, RSA 458:16-a allows it to distribute only property that belongs to the divorcing parties). The circuit court has no authority "to modify any child support order beyond the date of notice to the other party," White & White, 170 N.H. at 623; see RSA 458-C:7, II, and, by statute, "[n]o modification of a support order shall alter any arrearages due prior to the date of filing the motion for modification," RSA 461-A:14, VIII. Therefore, although the circuit court sits as a court of equity in divorce matters, according to the statutes governing such matters, it has no authority to alter a child support arrearage retroactively.

Further, by statute, "[a]ll support payments ordered . . . by the court under [RSA] chapter [461-A] shall be deemed judgments when due and payable." RSA 461-A:14, VI (2018); see Cole & Ford, 156 N.H. at 610; In the Matter of Giacomini & Giacomini, 151 N.H. 775, 777, 779 (2005). Trial courts, generally, lack authority to modify judgments absent proof of some substantial ground, outside a party's control, amounting to good cause, such as fraud, accident, mistake, or misfortune. See, e.g., In the Matter of Harman & McCarron, 168 N.H. 372, 375-76 (2015) (upholding trial court's determination that it lacked authority to vacate the parties' divorce decree where parties did not argue fraud, accident, mistake, or misfortune, but rather argued that vacating their decree was required because they had reconciled); Knight v. Hollings, 73 N.H. 495, 502 (1906) ("To entitle the plaintiffs to the relief they seek, there must be some substantial ground, such as fraud, accident, or mistake, which renders it against conscience to execute the decree they attack, and of which they were prevented from availing themselves by fraud, accident, or mistake, unmixed with any fraud or negligence on their part.").

7

Husband does not assert any of these grounds for modifying his arrearage. See Harman & McCarron, 168 N.H. at 375. The only grounds upon which he relies to argue that his arrearage should be modified are that: the parties agreed to modify the support; his lawyer did not tell him that court action was required to modify support; and the parties agreed that the younger children would live with him for a period of time. These grounds are insufficient as a matter of law to modify Husband's child support arrearage. Cf. id. at 375-76 (rejecting the parties' argument that the trial court had authority to vacate their divorce decree based solely on their reconciliation and agreement to vacate the decree).

Finally, having determined that the trial court lacked authority to alter the child support arrearage retroactively, we necessarily reject Husband's assertion that the trial court should have used the factors enumerated in RSA 458-C:5 to determine the amount of that arrearage. See RSA 458-C:5 (Supp. 2021). For all of the above reasons, we uphold the trial court's decision. We deny Wife's request for appellate attorney's fees without prejudice to her filing a motion for such fees under Supreme Court Rule 23. We deny Wife's request that we order Husband to "place the full arrearage amount in educational trust with [Wife] as trustee or in a 529 in the children's names to offset educational expenses" without prejudice to her seeking this relief in the trial court.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

8